Vermilion County Production Credit Association, Plaintiff-Appellee, v. Harold Izzard, Howard Stotler, and Kenneth Stotler, Doing Business as Fithian Grain Company, Defendants-Appellants.

Gen. No. 11,043.

Fourth District.

July 15, 1969.

Thomas, Mulliken & Mamer, of Champaign (Roger E. Haughey, of counsel), for appellants.

John T. Allen, of Danville, for appellee.

CRAVEN, P. J., delivered the opinion of the court.

This appeal arises from a judgment on the pleadings entered in favor of plaintiff, holder of a security agreement on corn, against the operators of a grain elevator, who had purchased the corn from the farmer who had given the security agreement and financing statement to plaintiff.

David J. Smith, tenant on a farm near Fithian, Illinois, borrowed $14,710 from plaintiff and executed a security agreement and financing statement as security for the loan. The security agreement and financing statement covered a certain corn crop of Smith's and other personal property. The financing statement was filed in the recorder's office of Vermilion County.

Thereafter defendants-elevator operators, on three separate dates, purchased all of this corn from Smith at a net price of $12,828.26 after deducting shelling and hauling expenses. Of such proceeds defendants credited Smith with $10,403.26 on notes and an open account due by him to them and paid him the cash balance of $2,425.

Plaintiff brought this action as lender against defendants to recover the proceeds of the corn. Defendants' motion to dismiss the complaint was denied. Defendants answered and plaintiff filed separate motions to strike portions of the answer and for judgment on the pleadings. The trial court granted judgment on the pleadings and entered judgment for plaintiff for $12,828.26 and costs. Post-trial motion was denied.

The pleadings show that at no time after taking the security agreement did the plaintiff give specific affirmative consent to Smith's selling the corn or release its financing statement.

The issues raised here, then, are (1) whether the security agreement and financing statement gave the farmer-borrower authority to sell the corn free of the lien of the security agreement by reason of the clauses which provided that it included products and proceeds of the crop, and (2) whether plaintiff waived its lien or gave the farmer authority to sell free of the lien by reason of a course of dealing between plaintiff and defendants or as a result of a custom or usage of trade in the area.

The financing statement contained a clause as follows:

"Products and proceeds of collateral, and after acquired property and natural increase are covered."

The security agreement had no direct language either permitting or prohibiting sale, but did contain the following:

"4. After-acquired Property. All property similar to that described under Items 2 and 3 above which may at any time hereafter be acquired by Debtor(s) or any of them, including, but not limited to, all offspring of livestock, additions to and replacements of livestock and poultry, replacements of and additions to equipment, machinery, fixtures, and other personal property above described, wool to be clipped from sheep, and all harvested crops, feed, and seed.

"5. Products and Proceeds. All products into which the goods and property described or referred to under Items 1 to 4, inclusive, or any part thereof, have been or shall at any time hereafter be manufactured, processed, or assembled; and all cash and non-cash proceeds from the sale, exchange, collection, or other disposition of any of said goods and property, and all accounts receivable resulting from the sale or other disposition of any of said goods or property."

Appellants contend that the above language of the financing statement and of the security agreement clearly acknowledge that the crop as the original collateral may be sold or otherwise disposed of without any requirement of approval. They insist that reading the agreement as a whole suggests full utilization of the so-called "floating or shifting" lien authorized by the Commercial Code under which new collateral is added under an after-acquired property clause and other collateral is eliminated through sale or other disposition.

A review of the law pertaining to secured transactions prior to enactment of the Uniform Commercial Code in many states of this country and in Illinois (Ill Rev Stats 1967, c 26, § 9–101, et seq.), shows that while previously many statutes had been enacted to give relief to merchants in connection with business financing, virtually none of these were applicable to farm credit or loans on farm products or equipment. Certain changes wrought by the Uniform Commercial Code in Article 9, when applied to the farmer, would seem aimed to eliminate many archaic limitations on farm credit. (Coates, UCC Brief No. 6: Financing the Farmer, The Practical Lawyer (Vol 13–No. 5), May 1967, p 59.)

The Uniform Commercial Code, as enacted in Illinois, however, recognizes that the rights of the secured lender depend upon the type of collateral taken as security and not so much upon the form of the transaction. Thus, sec-

tion 9–307(1) of the Code excepts a person buying farm products from a person engaged in farming operations from its liberalization provision that a buyer in the ordinary course of business takes free of a security interest even though the security interest is perfected and even though the buyer knows of its existence. The Code, therefore, must be interpreted reasonably as to all its language, and its limitations and requirements must be followed by more valid tests than to judge it entirely as a liberalization of credit or secured requirements.

Appellants also contend that under section 9–306 of the Code which provides:

> ". . . a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement *or otherwise, . . . .*" (Sec 9–306(2).) (Emphasis added.)

waiver or estoppel by implied consent due to the language used which includes "proceeds" is clearly a bar to the continuance of the security interest under the meaning of the words *"or otherwise."*

It is conceded by the parties that no express consent to sale of the corn to defendants by plaintiff was ever accorded. We believe it equally clear that a reasonable interpretation of the "After-acquired Property" clause in the Code and of the use of "proceeds" in the financing statement and the language above of the security agreement cannot extend to imply a consent by the holder of the security interest that the subject matter, i. e., corn crop, of that security agreement may be sold by the farmer. That provision can be interpreted reasonably only to mean that should a sale, exchange or other disposition occur, the proceeds or products resulting also would be covered by the security agreement. It is a clause inserted to protect the security holder as to third

194

parties—not one of permission or consent to the borrower. Under such circumstances we deem it unconscionable to interpret a protective clause as permissive or as an estoppel or waiver. To protect himself against insolvency or bankruptcy of the farmer, the creditor must comply with the requirements of section 9–306 of the Uniform Commercial Code and add "proceeds" in his financing statement. The statute having thus forced him to include this language in his financing statement, it cannot be used to imply an estoppel or waiver of lien or a consent to sale on his part.

■■ We find no provisions of the Uniform Commercial Code enacted in Illinois which displace the principles as known to the common law and equity. "Waiver" is the intentional abandonment or relinquishment of a known right. Certainly no such intent on the part of the lender is shown by the facts here. Nor has there been any act or conduct of the lender by executing the security agreement or financing statement which would amount to an estoppel. In fact, we deem it all to the contrary.

Hence, we cannot justify interpreting the security agreement or financing statement as implying a consent to sell free of the security interest or as a waiver or estoppel of the security interest.

As to the second issue of waiver or estoppel of the lender by a course of dealings between plaintiff and defendants, this appears as a more difficult problem. A case somewhat analogous is that of Clovis Nat. Bank v. Thomas, 77 NM 554, 425 P2d 726 (1967), involving a security interest in cattle. The security agreement had an express clause against selling without prior written consent of the secured party. The court there held that the lender-bank had followed a course of dealing with the debtor which permitted sale of the cattle and that this constituted a waiver of its security interest. There was a strong dissent to the majority opinion in that case.

Since that decision the New Mexico legislature has amended its code to provide that a security interest in farm products and the proceeds thereof shall not be considered waived by any course of dealings between the parties or by any trade usage.

In enactment of the Uniform Commercial Code in Illinois, unlike in New Mexico, the Illinois legislature added section 9–306.01 (Ill Rev Stats 1967, c 26, § 9–306.01), which imposes criminal penalties and declares it unlawful for a debtor under the terms of a security agreement who has no right of sale or other disposition of the collateral, to sell or dispose of it and fail to pay the secured party the amount of the proceeds due under the security agreement. Under such a penal statute, we cannot hold that the course of dealings or usage of the trade as shown here by the pleadings could raise an estoppel or constitute a waiver by the plaintiff-lender of its rights under the security agreement and financing statement.

■ ■ No course of dealings between the plaintiff-lender and the farmer-seller was shown here ever to have existed. What the lender may have done with defendants as to other borrowers would not establish a course of dealings between the security parties here involved. Likewise, neither a course of dealings nor a trade usage will be applied to contravene an established rule of law. Ozier v. Haines, 411 Ill 160, 103 NE2d 485 (1952), 21 Am Jur2d, Customs and Usages, § 16, at 691–692. Under the Uniform Commercial Code, a course of dealing between the parties or a trade usage, as therein defined, is used as a factor to determine the commercial meaning of the agreement which the parties made and not to displace or negate established rules of law. (See Uniform Code Comment, SHA, c 26, § 1–205, par 4, at 65–66).

■ Under the facts established by the pleadings in this case, no course of dealings or trade usage was

196

shown, which was within the meaning of the Uniform Commercial Code, that would cause the plaintiff-lender here to waive or be estopped to assert its security interest in the crops purchased from Smith by defendants. Hence, plaintiff was entitled to recover from the defendants the amount of the crop proceeds. The trial court was correct, therefore, in its judgment.

Judgment affirmed.

SMITH and MILLS, JJ., concur.