THE OVERLAND NATIONAL BANK OF GRAND ISLAND, A CORPORATION, APPELLEE, v. AURORA COOPERATIVE ELEVATOR CO., A CORPORATION, APPELLANT.

172 N. W. 2d 786

Filed December 5, 1969. No. 37233.

Crosby, Pansing, Guenzel & Binning and William D. Kuester, for appellant.

Luebs, Tracy & Huebner, Vincent L. Dowding, and Morsman, Fike, Sawtell & Davis, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This action was brought by the Overland National Bank of Grand Island, Nebraska, a corporation, against the defendant, Aurora Cooperative Elevator Company, for conversion of milo in which the plaintiff claimed a security interest. The milo was purchased by defendant

from Clyde C. Carnes. The district court entered judgment for $3,728.51 against the defendant. The defendant has appealed.

The facts are stipulated. The plaintiff is a bank doing business in Grand Island, Hall County, Nebraska, and the defendant operates two elevators, both located in Hamilton County, Nebraska. On February 21, 1966, plaintiff loaned Clyde C. Carnes $33,000 and since that date loaned Carnes additional money. On the same date, Carnes executed and delivered to the plaintiff a security agreement as security for said loan and additional advances. The security agreement covered all farm products including livestock and crops "now owned or hereafter acquired." The agreement granted the bank a security interest in all proceeds of the collateral, and contained a covenant that the borrower would not sell or otherwise dispose of the collateral. The security agreement was perfected by filing a financing statement with the county clerk of Hamilton County, Nebraska, on March 18, 1966.

In the fall of 1966, Clyde C. Carnes, without the consent or permission of the plaintiff delivered and sold to the defendant 225,980 pounds of milo. The milo was planted, grown, and harvested in 1966, on land in Hamilton County specifically described in the security agreement and financing statement. Clyde C. Carnes was a person engaged in farming operations and produced and acquired the above described milo in the ordinary course of his farming operations and business.

The defendant elevator took possession of the milo delivered to it by Carnes and paid Carnes the sum of $3,728.51 by delivering to Carnes a check drawn by defendant in the sum of $3,459.57 and by crediting Carnes' account with the defendant in the amount of $268.94. Carnes then deposited the check for $3,459.57 in his checking account in the plaintiff bank. The money paid to Carnes for the milo was never paid to the plaintiff by Carnes.

The district court found that the plaintiff had a valid security interest in the milo and a right to recover for conversion. The court also found that the plaintiff, without notice of the wrongful sale, had no duty to the defendant to exercise a right of set-off against the milo proceeds deposited in Carnes' account.

The defendant's first contention is that plaintiff did not have a valid security interest in the milo sold because it was not planted or growing on February 21, 1966; was thus after-acquired property; and the security interest did not attach unless new value was advanced.

Section 9-204, U. C. C., provides in part: "(1) A security interest cannot attach until there is agreement that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.

"(2) For the purposes of this section the debtor has no rights

"(a) in crops until they are planted or otherwise become growing crops, . . ."

Subsection (4) provides: "No security interest attaches under an after-acquired property clause

"(a) to crops which become such more than one year after the security agreement is executed . . . ."

Section 9-108, U. C. C., establishes that such a security interest in after-acquired collateral is deemed to be taken for new value if the debtor acquired his right in the collateral in the ordinary course of his business.

Under the facts stipulated here, the milo involved was planted, grown, and harvested within less than one year from the date of the security agreement and was acquired by Carnes in the ordinary course of his farming operations and business. Under the Uniform Commercial Code, an after-acquired property clause in a security agreement creates a valid security interest in crops which are planted and become such within one year after the security agreement is executed, where the rights in the

crops are acquired by the debtor in the ordinary course of his business.

The defendant also contends that it was entitled to take the milo free of the security interest here for a combination of reasons. One reason urged is that under the provisions of the Uniform Commercial Code, a buyer in the ordinary course of business generally takes free of a security interest created by the seller, and the reasons justifying that general rule ought to apply equally to a farming business.

The answer to this is that the code makes a specific exception in cases such as this. Section 9-307, U. C. C., provides: "(1) A buyer in ordinary course of business *other than a person buying farm products from a person engaged in farming operations* takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis ours.)

This case is directly within the exception. The reasons for the legislative action may not be apparent, but the legislative intent is apparent, and the language is definite and unambiguous.

Defendant also urges that an implied authorization or permission to sell the milo may be found from the course of dealing and usage between the plaintiff and Carnes. Reliance rests on section 9-306 (2), U. C. C. The only evidence in this case was the fact stipulation, the security agreement, the financing statement, and two ledger sheets of Carnes' bank account with the plaintiff bank. These ledger sheets show only amounts and dates of deposits and checks for the months of October and November 1966. The account is titled "Clyde Carnes & Son, Auctioneers." There is no evidence that any deposit came from Carnes' farming operation except the milo proceeds referred to in the stipulation, and even that deposit cannot be identified on the ledger sheets. Such evidence is insufficient to establish implied authorization or permission to sell farm products.

Clovis National Bank v. Thomas, 77 N. M. 554, 425 P. 2d 726, is not in point. In any event, the parties here specifically stipulated that the sale of the milo to the defendant was "without the consent or permission of the plaintiff." It requires interpretive ingenuity to argue that the stipulation referred only to an express consent or permission. Giving the defendant the benefit of the doubt, however, there is still no evidence that the sale of the milo by Carnes was impliedly authorized by any course of dealing or conduct of the plaintiff.

The defendant also asserts that the provision in the security agreement granting a security interest in all "proceeds" of the collateral, as well as in the collateral itself, indicates an implied authorization for sale.

A provision in a security agreement granting a security interest in proceeds of the collateral, as well as in the collateral, should be interpreted to mean only that should a sale, exchange, or other disposition occur, the proceeds resulting also would be covered by the security agreement. It is a clause inserted to protect a security holder as to third parties, not one of permission or consent to the borrower. See Vermillion County Production Credit Assn. v. Izzard, 111 Ill. App. 2d 190, 249 N. E. 2d 352.

The defendant's final contention is that plaintiff's failure to exercise a right of set-off against the proceeds terminated its security interest in the milo. Ordinarily the right of set-off is a privilege which the bank has, not a duty owing to the depositor or one primarily liable on the debt. See 10 Am. Jur. 2d, Banks, § 678, p. 651. The district court specifically found that the plaintiff had no notice of the wrongful sale and had no duty to the defendant to set-off the milo proceeds, which were deposited in the account of Clyde C. Carnes, against his obligation to the plaintiff. The evidence fully supports the finding and it is unnecessary to decide whether or not any such duty would have arisen had there been such notice.

The judgment of the district court was correct in all respects and is affirmed.

AFFIRMED.