In the matter of **KITTYHAWK TELEVISION CORPORATION, Bankrupt.**

**Robert K. CORWIN, Trustee,**
**Plaintiff,**

v.

**RCA CORPORATION, Defendant.**

**No. 71–398–D.**

United States District Court,
S. D. Ohio, W. D.

Sept. 12, 1974.

Nicholas Hollenkamp, of Turner, Granzow, Spayd & Hollenkamp, Dayton, Ohio, for RCA in BK–71–398–D.

Frank M. Root, Jr., and Jack F. Pickrel, of Pickrel, Schaeffer & Ebeling, Dayton, Ohio, for Trustee Robert Corwin.

OPINION AND ORDER

CARL B. RUBIN, District Judge.

This is an appeal from the Bankruptcy Judge's decision in Case No. 77–398–D, declaring Radio Corporation of

America's security interest in certain equipment owned by the bankrupt, Kittyhawk Television Corporation, invalid and unenforceable against the Trustee in Bankruptcy. The appeal has been timely perfected, and jurisdiction is proper, pursuant to 28 U.S.C. § 1334.

The facts are not in dispute. Kittyhawk Broadcasting Corporation (hereinafter "Broadcasting") entered into two chattel mortgage agreements with Radio Corporation of America (hereinafter "RCA") in November, 1966, and March, 1967. Financing statements between Broadcasting and RCA were filed with the Ohio Secretary of State and the Recorder of Montgomery County. The validity and perfection of these security interests is not challenged by the trustee. Kittyhawk Television Corporation (hereinafter "Television") was formed on March 17, 1967. Through an agreement dated June 19, 1967, Broadcasting agreed to exchange all of its assets and liabilities for all the stock of Television. Television and Broadcasting were located at the same address; had identical officers and shareholders.

On June 22, 1967, Mr. Caywood, President of Broadcasting and Television, notified RCA of the assignment of RCA's contracts to Television, requested RCA to change its records to reflect the assignment and requested that RCA advise them as to the steps necessary to affect the transfer. RCA replied in a letter dated June 29, 1967, that it had changed its records to note the change of name, enclosed new notes, made out in the name of Television, and enclosed Transfer of Equity Agreements for the two contracts. These Transfer of Equity Agreements were executed and returned to RCA on July 28, 1967. RCA did file a copy of the Transfer of Equity Agreement under the name of Broadcasting on October 26, 1967, with the Secretary of State of Ohio. RCA made no filings under the name of Television. Television was adjudicated a bankrupt upon an involuntary petition on February 22, 1971.

The issue before the Court is whether the security interest which RCA had perfected in the equipment when held by Broadcasting survived the subsequent transfer of assets to Television. The applicable law is that of Ohio; more succinctly, The Uniform Commercial Code, Article Nine, Secured Transactions.[1] The section in controversy is U.C.C. § 9–306(2)[2] which provides as follows:

> (2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor *unless his action was authorized by the secured party in the security agreement or otherwise, . . . .*" [emphasis added]

The Bankruptcy Judge below ruled that the exchange of assets, liabilities and stock between Broadcasting and Television was not a mere change in name or corporate structure, but an exchange between two separate legal entities. The Transfer of Equity Agreements were not security agreements but assumptions of Broadcasting's existing obligations under the contracts; these were not expressed agreements that the security interests would survive the transfer. Applying § 9–306(2) to the transaction, he concluded that RCA had authorized the exchange, and the security interest in the collateral did not survive the transfer.

In conjunction with this holding, the Bankruptcy Judge applied the reasoning of In re Vieths, 9 U.C.C.Rep. 943 (1971). In that case the debtor, Kuhn, operated a retail clothing store under the name, "Vieths." The creditor, Ripon State Bank, had a valid security interest in his inventory and accounts. The lien was properly filed under the name of Kuhn because he was a sole trader, although he did business under

---

1. For the purposes of this case, Ohio's version of the U.C.C. is that of the 1962 Official Text.

2. Appellant's contention that § 9–306 applies only to proceeds and not transfers of collateral lacks decisional support.

the name of Vieths. Sometime later Kuhn organized a corporation named "Vieths Incorporated." Kuhn transferred his assets to the corporation, "subject to encumbrances thereon and all liabilities . . ." A new note was prepared by the bank, signed by Kuhn as President of Vieths, Inc., and guaranteed on the reverse side by Kuhn, personally. No new security agreement was executed and no financing statement was filed showing any lien on Vieths, Inc. In holding for the Trustee in Bankruptcy, the Bankruptcy Judge stated:

> The purpose of the filing requirements are quite obvious. The purpose is to give notice to the public, and to future creditors, that the assets of a debtor are encumbered. The evil to be protected against is a *secret lien* against the assets of a debtor which *might* cause innocent parties to extend credit to such debtor without knowledge of the prior lien. To allow one creditor to have a secret lien would be a fraud on all other creditors. That is exactly what the bank had in this case—a secret lien. The notice filed under the name, Edwin J. Kuhn, was not notice that any lien existed against the assets of the corporation, Vieths, Inc. Creditors are not required to look under the name of the president of a corporation to determine whether liens exist. The notice must be filed under the name of the corporation. For this reason the bank had a secret lien, not properly filed.

The bank attempts to rely upon the provisions of § 409.306(2) Wis.Stats. to preserve its lien against the trustee. The purpose of § 409.306(2) is to continue the former rule that where a debtor makes an *unauthorized* disposition of collateral, the security interest continues in the hands of a transferee or purchaser. Subsection (2) of § 409.306 codifies this rule. Uniform Laws Anno., UCC, § 9–306. Thus if the debtor in this case had formed a corporation and then transferred his assets to the corporation without the

knowledge or consent of the bank, the bank's lien on the original collateral would have continued. Whether it would be good against after-acquired inventory purchased by the corporation would be open to serious question. However, in the case before the court, that question need not be reached. The transfer was made with the knowledge and consent of the bank. Therefore it was not an unauthorized transfer. Why should the bank be protected against a transfer of assets of which it had full knowledge? The bank had a simple method of protecting its lien. That method was to obtain a new security agreement from the corporation and to file notice thereof in the proper filing offices. Having failed to do this, the bank cannot seek protection against its own negligence. 9 UCC Rep. 947, 948.

■ The appellant argues that this transaction is more in the nature of a corporate reorganization than a sale. Since only stock was received in exchange for the transfer, there were no "proceeds" realized, and 9–306 ought not apply. The short answer to this contention is that while this transaction is in the nature of a corporate reorganization, it is in the form of a sale or exchange between two entities which the law regards as separate. RCA realized this by requiring the Transfer of Equity Agreements be signed by both parties and returned to it. Also, the stock received by Broadcasting in exchange for its assets and assumption of its liabilities were "proceeds" within the meaning of § 9–306(1):

> "Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of.

It follows that § 9–306 does apply to the exchange of stock between Broadcasting and Television.

The more difficult question which the appellant raises is in regard to the interpretation given to § 9–306(2). Appellant contends that § 9–306(2) is in-

tended to provide continuing protection to the secured creditor in proceeds where the security is intended to be sold, as is the case with inventory. A buyer of the collateral would obtain protection from this security interest from § 9–307 as a buyer in the ordinary course. From this it is argued that the "authorization" referred to in § 9–306(2) is in reality intended to refer to an agreement, implied or expressed, by the secured party that the security agreement will *not* survive a sale. Broadcasting was not a merchant dealing in goods such as the collateral, and Television knew of the existence of the security agreements and agreed to assume Broadcasting's obligations under the contracts. Thus, it is contended, the parties intended and agreed that the security interests should survive the exchange, and § 9–306(2) does not provide for a different result.

It is further argued that Revised Article Nine of the Uniform Commercial Code (1972), especially § 9–402(7) has relevance to the correct interpretation of § 9–306(2). That section deals with the case in which the corporate structure or name of the debtor is so changed as to make the previously filed financing statement seriously misleading. It provides that the financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer. Justice Braucher of the Massachusetts Supreme Court in a letter submitted to the Bankruptcy Court states that § 9–306(2) deals with the situation in which the secured party has agreed that the security interest will no longer exist, and Revised Section 9–402(7) deals with the situation where the secured party consents to the transfer on the understanding the security interest will continue. The appellant's position is that Revised Article Nine does not change the law but merely codifies an area that was not covered by specific provision. Therefore, Ohio's failure to adopt Revised Article Nine does not prevent the Court from adopting its rationale.

■ This appeal does not present to the Court the typical case of the secured creditor seeking to recover collateral allegedly sold without his authorization. In dealing with those cases, however, the courts have uniformly looked to the language of § 9–306(2) as meaning what it says: Was the sale, exchange or other disposition of the collateral authorized by the secured party? Whether the sale is authorized or unauthorized is a question of fact which the courts determine. Whether the security interest continues in the collateral is a legal consequence of that factual finding.[3] Thus appellant's position that the secured party can agree that the security interest will not continue is only partially correct, for § 9–306(2) provides by operation of law that it will not continue should the secured party agree to the debtor's transfer of the collateral.

■ This is an area of competing interests among three types of interested parties. The secured creditor wishes protection from the sale of collateral by the debtor which he did not authorize. The purchaser wishes protection from the secured creditor in sales of collateral which were authorized. Creditors wish protection from secret liens on the property of the bankrupt. The Court is of the opinion that § 9–306(2) protects each interest by its exact terms. If the debtor is not authorized to sell the collateral, then the secured creditor continues to have a security interest in the collateral and any proceeds received by the debtor. If the secured creditor authorizes the sale of the collateral, then the security interest continues only in the proceeds. But should the secured creditor wish to continue the security interest in the collateral in the hands of the purchaser, a new security agreement and financing statement must be prepared and filed. This is a new security interest which does not arise from the opera-

3. For a partial list of authority, see Appendix.

tion of § 9–306(2) and therefore must comply with the usual filing requirements of Article Nine. Only in this manner can competing creditors be protected from secret liens. This too is an interest Article Nine seeks to protect.

Accordingly, the Court finds that there was no error in the decision below, and the judgment of the Bankruptcy Judge is hereby affirmed.

It is so ordered.

## APPENDIX

United States v. Central Livestock Assn., Inc., 349 F.Supp. 1033 (D.C.N. D.1972)

Lisbon Bank & Trust Co. v. Murray v. Meier, 12 UCC Rep. 356 (1972)

In re Cadwell, Martin Meat Co., 10 UCC Rep. 710 (1970)

Vermilion County Production Credit Assn. v. Izzard, 111 Ill.App.2d 190, 249 N.E.2d 352 (1969)

First Finance Co. v. Akathiotis, 110 Ill. App.2d 377, 249 N.E.2d 663 (1969)

Rattan Chevrolet, Inc. v. Associates Discount Corp., 443 S.W.2d 360 (Tex. Civ.App.1969)

Universal C.I.T. Credit Corp. v. Middlesboro Motor Sales, Inc., 4 UCC 1126 (1968)

Rockland Credit Union, Inc. v. Gauthier Motors, Inc., 5 UCC Rep. 637 (1967)

United States v. Greenwich Mill & Elevator Co., 291 F.Supp. 609 (N.D.Ohio 1968)

Overland National Bank of Grand Island v. Aurora Cooperative Elevator Co., 7 UCC Rep. 11 (1969)

In re Vaillancourt, Noble Co. v. Mack Financial Corp., 107 R.I. 12, 264 A.2d 325 (1970)

United States v. Pete Brown Enterprises, Inc., 9 UCC Rep. 734 (1971)

Blubaugh v. Ponca City Production Credit Association, 9 UCC Rep. 786 (1971)

International Harvester Credit Corp. v. Commercial Credit Equipment Corp., 10 UCC Rep. 196 (1972)

Commercial Credit Corp. v. National Credit Corp., 251 Ark. 541, 473 S.W. 2d 876 (1971)

United States v. Hughes, 10 UCC Rep. 697 (1972)

White-Sellies Jewelry Co., Inc. v. Goodyear Tire & Rubber Co., 477 S.W.2d 658 (Tex.Civ.App.1972)

United States v. E. W. Savage & Son, Inc. v. Shields, 10 UCC Rep. 1093 (1972)

Clovis National Bank v. Thomas, 77 N. M. 554, 425 P.2d 726 (1967)

Crystal State Bank v. Columbia Heights State Bank, 11 UCC Rep. 922 (1973)

Farmers National Bank v. Ceres Land Co. v. Hoch, 12 UCC Rep. 960 (1973)

Baker Production Credit Assn. v. Long Creek Meat Co., Inc., 513 P.2d 1129 (Or.1973)

Farmers State Bank v. Edison Non-Stock Cooperative Assn., 13 UCC Rep. 728 (1973)

Chrysler Credit Corp. v. Malone, 13 UCC Rep. 964 (1973)

Long Island Trust Co. v. Porta Aluminum Corp., 14 UCC Rep. 833 (1974)

Hampstead Bank v. Andy's Car Rental System, Inc., 7 UCC Rep. 932 (1970)

Stephenson Finance Co. of Augusta, Inc. v. Bruce, 7 UCC Rep. 944 (1970)

United States v. Big Z Warehouse, 311 F.Supp. 283 (S.D.Ga.1970)

McFadden v. Mercantile-Safe Deposit & Trust Co., 260 Md. 601, 273 A.2d 198 (1971)

Garden City Production Credit Assn. v. Launan, 8 UCC Rep. 1163 (1971)

In re Mid State Wood Products Co., 323 F.Supp. 853 (N.D.Ill.1971)

Credit Plan, Inc. v. Hall, 9 UCC Rep. 514

See also: First City National Bank of Benthany v. Waco Pacific, Inc., 9 UCC Rep. 1064 (1971)