CHARLES RICHARD ANTRIM, Plaintiff-Appellant and Cross-Appellee, *v.* MODERN INCOME LIFE INSURANCE COMPANY, Defendant-Appellee and Cross-Appellant.

Fourth District   No. 16529

Opinion filed May 18, 1981.

D. Bradley Blodgett, of Gillespie, Cadigan & Gillespie, of Springfield, for appellant.

Carl R. Miller and Thomas S. Sly, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This litigation concerns the right of plaintiff, Charles Antrim, a former agent and officer of defendant, Modern Income Life Insurance

Company, to certain commissions claimed to be payable to him upon the payment by defendant's policyholders of renewal premiums on life insurance policies written by plaintiff or those under his supervision. The commissions on those written by him will be referred to as agent's renewals and the commissions on those written under his supervision will be referred to as overwrite renewals.

The action began on September 21, 1977, when plaintiff filed suit against defendant in the circuit court of Macon County seeking recovery for defendant's failure to pay certain overwrite renewals. Defendant answered denying some of the allegations but making no affirmative defenses and counterclaimed alleging matter not pertinent on review. Following a bench trial, the court entered an order on July 7, 1980, denying plaintiff's claim for the overwrite renewals and denying the counterclaim. The court also declared plaintiff to be entitled to receive agent's renewals until March 20, 1982. Plaintiff has appealed the portion of the order denying him overwrite renewals. Defendant has cross-appealed the declaration of length of time it is required to pay agent's renewals but has not cross-appealed the denial of its counterclaim.

As the ruling as to the length of time the agent's renewals must be paid is the simpler of the issues and because a discussion of that issue will aid in explaining the issue of the overwrite renewals, we consider that issue first.

Throughout plaintiff's service to defendant, their agreement always provided for defendant to pay agent's renewals to plaintiff after termination of his service subject to the following:

> "If after three (3) years or more of satisfactory service to the COMPANY this contract is terminated and the AGENT has produced a minimum of Fifty Thousand Dollars ($50,000) of life insurance, exclusive of term insurance each contract year, then the renewal commissions set out above shall be payable to the AGENT for an additional period equal to the number of years service."

Plaintiff's service began December 27, 1968, and ended in March 1975. He "produced a minimum of [$50,000]" of the required type of insurance "each contract year" from the beginning of his service through the contract year ending in December 1975, although he worked for only a few weeks in the latter, or seventh, year before ending service in March 1975. Because of having produced the required amount of insurance for seven years, plaintiff asserts the court correctly found him entitled to agent's renewals for seven years after ending service. Because he served defendant for only six full years, defendant argues that it should have been required to make the payments for only six years, *i.e.*, to March 20, 1981.

■■■ The cited portion of the agreement was ambiguous. As no dispute

existed as to its wording and no disputed evidence was provided as to the intentions of the parties, its interpretation is a question of law. (*Chicago Daily News, Inc. v. Kohler* (1935), 360 Ill. 351, 196 N.E. 445; *Sherbrooke Homes, Ltd. v. Krawczyk* (1980), 82 Ill. App. 3d 990, 403 N.E.2d 622.) Production of the required amount of insurance rather than service for the entire period seems to be the intended key to determination of whether an agent was entitled to credit for a contract year. Defendant's claimed interpretation would have enabled defendant to terminate service of an agent slightly before the end of a calendar year and deprive the agent of the year's credit. In accordance with an often-used rule of construction, ambiguity in a contract between an insurance carrier and its agent was construed by a New York court most strongly against the insurance carrier who had prepared the document. (*Aldrich v. New York Life Insurance Co.* (1923), 235 N.Y. 214, 139 N.E. 245.) We agree with the trial court's construction of the contract provision before us.

During plaintiff's tenure with defendant, he served not only as an agent, but later in various managerial and vice-presidential capacities as well. During the time he served in these additional capacities, his agreement with defendant provided for him to receive commissions on the original and subsequent premiums paid on policies sold by those under his supervision. These commissions were apparently called overwrites because they were over and in addition to the commission given to the person actually selling the policy. The contracts between the parties for plaintiff's service as a district manager and area vice-president expressly provided that he would have to serve in a particular capacity for three years before he would have any right to overwrite renewals after leaving service. He admits he did not qualify in that respect. His written contract as an agency vice-president and his subsequent oral contract as a recruiting vice-president, which incorporated the terms of the former contract, contained no such express requirement. Plaintiff's complaint sought recovery for defendant's refusal to pay overwrite renewals arising from his service in those capacities. In denying this relief, the trial court held: (1) plaintiff's failure to serve three years in either of those capacities barred him from entitlement to overwrite renewals from that service because the three-year requirement was also an implied condition of those agreements; and (2) plaintiff had waived his rights to the commissions.

The written contract by which plaintiff served as agency vice-president and which served as the basis for his employment as recruiting vice-president was dated April 19, 1971, and provided for him to receive original and renewal overwrite commissions of 1% and ½% respectively. It stated that it was a supplement to the contract by which plaintiff had

become an agent of defendant and contained the following pertinent provisions:

> "This supplement shall be subject to all terms and conditions of the Agent's Contract to which it is attached and not in conflict with. This agreement will terminate simultaneously with the termination of the Agent's Contract to which it is attached but may be terminated prior thereto by the Company and without cause. * * * Notwithstanding anything to the contrary herein, no commission overwrites will be paid hereunder after the termination of this supplementary agreement unless Agent's Commissions are payable under the Agent's Contract to which this agreement is attached."

Because the foregoing required that agreement to be subject to the terms and conditions of the agent's contract, the trial court concluded construction of the two together implied the requirement of three years service in the vice-presidential position involved as a condition to receiving overwrite renewals after termination of service. We disagree. The agent's contract only required three years of service to defendant and did not specify the capacity. Thus, even by analogy, a three-year requirement would not be implied. Plaintiff was conclusively shown to have been in compliance with all of the terms of the agent's contract at the time he left defendant's service and to have been entitled to renewals thereunder. He also had a vested right to overwrite renewals under the terms of the agreement in question.

Defendant's assertion that plaintiff had waived his vested right to the overwrite renewals arose from the following sequence of events. In December 1973 or January 1974, defendant's board of directors decided to (1) discontinue the position of recruiting vice-president which plaintiff then held, and (2) "terminate" the system by which overwrite renewals were paid to vice-presidents, replacing it with a system of salaries and bonuses. In early 1974, Paul Montgomery, executive vice-president of defendant, informed plaintiff of these developments. Plaintiff refused an offer to take a position with defendant in Missouri. He later agreed to take a regional vice-presidency where he served for a while before taking a position in defendant's estate planning department. He served in that capacity until he ended his employment in the early months of 1975. Taken most strongly in favor of defendant, the evidence shows that defendant's officers explained to plaintiff that the overwrite commission system for vice-presidents had been abolished and that defendant would not pay those commissions but that the compensation to be paid under the new system was intended to compensate for the loss of overwrites. The evidence was clear that although plaintiff accepted the compensation

paid for his new jobs, he continued to maintain that he was entitled to previously earned overwrite renewals.

The trial court deemed plaintiff's acceptance of the new positions and the compensation offered for them to have constituted a waiver of his claim for overwrite renewals. The court emphasized that the new compensation had been set at a figure which it thought would compensate for loss of the commissions. Defendant maintains this determination to not be contrary to the manifest weight of the evidence. We again disagree.

We consider the trial court to have given too little consideration to the fact, as we have previously determined, that plaintiff's rights to overwrite renewals after termination of service and for so long as he was receiving agent's renewals, were vested. Defendant's officers spoke of "terminating" those rights, when actually all defendant could do to defeat those rights would be to obtain a valid agreement from plaintiff to forego them.

Defendant presented testimony of several of its officers who had accepted defendant's claim as to their rights and were satisfied in doing so. However, the testimony of these witnesses indicated they did not understand the vested nature of their rights but assumed defendant could treat their rights to the overwrite renewals already earned in the same manner as future compensation not previously agreed upon. No evidence was presented of any offer being made to plaintiff or those witnesses that treated them as having vested rights. Rather, the evidence showed defendant to have taken the position that the overwrite renewals would not be paid.

■■ This court has adopted the definition of "waiver" as "the abandonment or relinquishment of a known right." (*Vermilion County Production Credit Association v. Izzard* (1969), 111 Ill. App. 2d 190, 195, 249 N.E.2d 352, 354.) No evidence showed plaintiff to have expressly intentionally abandoned or relinquished his right to the commissions in question. In fact, he always claimed his right to them. In the face of that claim, we do not deem plaintiff's conduct in accepting the new positions and salary offered to be an inferential or tacit abandonment of his claimed right.

We agree that if an employer discharged an employee from one position and then offered him another at a stated salary, the employee would be held to have impliedly accepted the salary offer if the employee started working and accepted the compensation at the offered price although he continually claimed he was entitled to more. However, if the parties had also been in dispute as to the employer's liability for back pay, and the employer refused to pay it, the employee's acceptance of the new compensation would not be held to work a waiver of his right to back pay. This would be so even if the employer had told the employee that the new salary was fixed at a level high enough to alleviate any need he might have for back pay.

Here the claimed right to the overwrite renewals was earned and vested and analogous to the claimed vested right to the back pay in the hypothetical. The compensation offered by both employers was conditioned upon work to be performed in the future. Plaintiff did not give up that right.

We affirm the portion of the order declaring plaintiff entitled to agent's renewals until March 20, 1982. We reverse the portion of the order denying plaintiff recovery for overwrite renewals. We remand to the circuit court with directions to determine the amount of those commissions to which plaintiff is entitled.

Affirmed in part; reversed in part; remanded.

MILLS, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, concurring in part, and dissenting in part:

I would affirm the judgment of the trial court within the rule that where a contract is partially written and partially oral, it is for the trier of fact to decide if a contract exists and, if so, what its terms are. (*Sanchez v. Walls* (1978), 59 Ill. App. 3d 75, 375 N.E.2d 138.) It is apparent that the trial judge, as trier of fact, was required to pass upon the credibility of the contradictory testimony concerning the transaction. The judgment entered here is clearly not contrary to the manifest weight of the evidence.

The declaration in the majority opinion that the plaintiff had a vested right to the commissions does not control the issue as to whether there was a waiver in fact. The plaintiff presented testimony as to the discussions of the parties regarding the contractual rights which plaintiff claimed and to consider the circumstance that he did thereafter proceed to enter upon employment under a compensation plan designed to replace the system of commissions. He worked and accepted such form of compensation.

An implied waiver may arise where a person against whom the waiver is asserted pursues such course of conduct as to sufficiently evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than waiver. (*Kane v. American National Bank & Trust Co.* (1974), 21 Ill. App. 3d 1046, 316 N.E.2d 177.) While another judge might reach a different conclusion than did the trial judge here, the judgment entered by the latter is not contrary to the manifest weight of the evidence.