---

CONYNGHAM (RUCHER v.). See Case No. 12,106.

CONYNGHAM (WORTMAN v.). See Case No. 18,056.

CONYNHAM (UNITED STATES v.). See Case No. 14,850.

---

## Case No. 3,150.

### In re COOK et al.

[3 Biss. 122; 4 Chi. Leg. News, 1; 20 Pittsb. Leg. J. 32.][1]

District Court, W. D. Wisconsin. Sept. Term, 1871.

INSOLVENT PARTNERS—TRUSTEES FOR FIRM CREDITORS—TRANSFER TO CO-PARTNER—WHEN VOID.

1. When partners are in fact insolvent, they should be considered in equity as holding the partnership effects in trust for the benefit of the firm creditors, and cannot by a transfer of the interest of one to the other defeat this trust.

2. A sale by one partner to his co-partner, when the firm is insolvent and on the eve of bankruptcy, is presumptively fraudulent as to the firm creditors, and the court should set it aside and distribute the property as firm property.
[Cited in Mattocks v. Rogers, Case No. 9,-300.]

3. The legal effect of such transfer being to change the order of payment and prefer certain creditors, the private creditors over the firm creditors, it would be void as creating a preference contrary to the provisions of section 35 of the bankrupt law [of 1867 (14 Stat. 534)].
[Cited in Re Tomes, Case No. 14,084.]

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 20 Pittsb. Leg. J. 32, contains only a partial report.]

This was a petition by Clara M. Davis, to obtain satisfaction, out or funds in the hands of the assignee, of a judgment recovered by her against Charles R. Gleason, one of the bankrupts. The facts appear fully in the opinion.

W. P. Bartlett, for petitioner.

Tenney, McClellan & Tenney, for assignee, and firm creditors.

HOPKINS, District Judge. The questions raised in this case are of far more than ordinary importance to the whole mercantile community. The bankrupts entered into a mercantile and lumbering partnership in the year 1868, Cook agreeing to put in one-third of the capital, and Gleason two-thirds. Cook, it is claimed, did not put in his share, and what he did put in he drew out, principally before the 1st of January, 1871. The firm, in December, 1870, were threatened with bankruptcy proceedings, and were largely insolvent. About the first of January, 1871, the firm dissolved, and Cook agreed to transfer all his interest in the firm to Gleason for five hundred dollars, which he was to receive in claims, $300 being against himself, and Gleason agreeing to pay the partnership debts; but this transfer was not in fact made until the 18th day of January, 1871, when the papers were executed and notice of the dissolution published. During the year 1870, the parties, with the joint funds, built a store for their partnership business on a lot they owned in Eau Claire.

That store and lot, at the time of the dissolution, was a part of the assets of the firm, and was transferred to Gleason by Cook as a part of the firm property. The firm was then insolvent, and so were the partners individually; but as to whether they, or either of them knew it, the evidence is insufficient to determine, although the probabilities are that they did, for Cook had withdrawn and used up all his capital, and they were being strongly pressed by their creditors, and even threatened with bankruptcy proceedings.

The debts were principally firm debts, and there is no evidence before me that either owed any individual debts. except the debt of the petitioner against Gleason. One of the firm creditors filed a petition in bankruptcy on the 19th day of January, 1871, the day after the execution of the transfer papers from Cook to Gleason, and upon this petition they were adjudged bankrupts.

This store was taken possession of by the assignee in bankruptcy, and was sold by order of the court, free and clear of all incumbrances, except a certain mortgage, and the money ordered brought into court, and the claims of all creditors which were a legal lien upon the property to stand· as against the fund arising from the sale.

Clara M. Davis now petitions the court for the payment of a judgment which she obtained against the bankrupt, Charles R. Glea-son, on the 22d day of January, 1870, for $1,562.97, and interest since its recovery, out of the fund derived from such sale. In her behalf it is argued that by the transfer of Cook to Gleason the property that before was partnership property and subject first to the payment of the partnership debts, became the private property of Gleason, and that thereupon her judgment became a lien upon that real estate, and should be paid before the partnership debts; that at the time of filing the petition in bankruptcy there was no partnership property, but it had, by the dissolution of the firm and the transfer by Cook to Gleason, become the individual property of Gleason. It was further argued that, by the transfer, what was before partnership property had become private property, and was, under the provision of section 36 of the bankrupt act, to be applied first to the payment of the private debts of Gleason, and only the surplus remaining after the payment in full of all Gleason's private debts was applicable to the payment of the partnership debts of Cook & Gleason.

If it did become private property by that transfer, such is undoubtedly the rule of law. The bankrupt act, under which the assignee took and sold it, provides that the net proceeds of all the joint stock shall be appropriated to pay the creditors of the copartnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors, and the balance only of the separate estate, after payment of the separate debts, is to be applied to the payment of the joint debts; and the balance only of the partnership property, after the payment of all partnership debts, to be applied to the payment of the separate debts. In Howe v. Lawrence, 9 Cush. 553, it is said the effect of such transfer, as between the partners, is to vest the legal title to the property in the individual partner with a right to use and dispose of it as his separate property. The court say further that it would seem to follow as a necessary consequence that the creditors of the firm, after such conveyance, would have no right to look to the property transferred as joint property upon which they had any special claim or lien.

This, they say, is the effect when the property is sold in good faith and without any intent to defraud the creditors of the firm. In that case they hold, however, that, although the partnership was insolvent, the sale was good to place the legal title in the individual partner, and to give the individual creditors of the buying partner a preference over the partnership creditors. They say, however, that there was no proof to show that the partners knew they were insolvent. It was claimed, on the argument, that the case went so far as to hold that knowledge, even of their insolvency, would not change the rule; but I don't think the decision goes so far. That case lays down the rule correctly as applicable to solvent part-

nership, I have no doubt (Ladd v. Griswold, 4 Gilman, 25); but, in cases where the firm is insolvent, I am not satisfied with the reasoning or conclusions, and I think I am sustained in my view by the case of Ketchum v. Durkee, 1 Barb. Ch. 480, and Story, Partn. § 358 et seq.

I think where a firm is insolvent the partners should be considered rather in the light of trustees of the firm property for the benefit of the firm creditors, and should not be allowed to sell to each other, and thus defeat the equitable priority of the firm creditors.

But if such transfer operates to make what was previously company property, private property and applicable, first to the payment of the private debts of the partner purchasing, as would be the necessary result in cases of insolvency and bankruptcy such transfer would be a fraud upon the joint creditors, it would be sanctioning the right of one partner to allow his share of the firm property to be applied to the payment of a debt for which neither he nor his property was liable at law or in equity. Kirby v. Schoonmaker, 3 Barb. Ch. 46. In other words, it would be authorizing the partner selling to assign his property to pay the debts of another, for which he was in no way liable, instead of paying his own debts. He would receive no legal consideration in such case, and such conveyance would be in fraud of the law, and equity would at once set it aside. It is only when parties act fairly for the purpose of dissolution and winding up the affairs of the firm that creditors will be bound by a change of the partnership property to the separate estate of one of the partners. Howe v. Lawrence, supra, 558; Story, Partn. § 97, note 2. Take this case as an illustration. Before the sale this was partnership property and liable, in case of bankruptcy, first to the payment of all firm debts. Cook sells his share to Gleason in consideration of a nominal sum and the agreement that Gleason would pay the firm debts. Gleason does not pay, and the next day after the transfer and notice proceedings in bankruptcy are commenced, and the property, instead of being applied to the payment of Cook's debts, or the firm's debts for which he was liable, is applied first to the payment of debts for which he is in no way liable. Can it be possible that such a transaction, causing such injustice towards the firm creditors, can be sustained? If he had assigned his interest in the firm assets to pay Gleason's private debts, instead of his own or the firm debts, would not the court have set it aside as being without consideration, and a fraud upon his own creditors? And such being the legal consequences of the transfer as claimed by the counsel of Davis, can there be any other or different decision in this case than there would be in that? It seems to me not. The transaction in its legal effect, is the same,

and courts must pronounce the same judgment upon it as if the transfer had expressed that purpose upon its face. To sustain this transaction, and give to it the effect claimed by Davis's counsel, would be to sanction, in the most direct manner, the right of insolvent partners to create preferences contrary to the express terms of the bankrupt act. In re Byrne [Case No. 2,270]; In re Crockett [Id. 3,402]. I find this question has indirectly been before some of the district courts in bankruptcy, and although not directly passed upon, I think the reasoning in those cases in harmony with the views herein expressed by me.

I think there are three good answers to the claim of Davis, the private creditor of Gleason:

First—When partners, as in this case, are in fact insolvent, they should be considered in equity as holding the partnership effects in trust for the benefit of the firm creditors; and they cannot, by a transfer of the interest of one to the other, defeat this trust; as stated in Bird v. Morrison, 12 Wis. 153: "The partnership property is subject to an implied trust in favor of the partnership debts."

Second—That a sale by one partner to his co-partner, when the firm is insolvent and upon the eve of bankruptcy, as in this case, which, if upheld, would operate to apply the property of the retiring partner to the payment of the individual debts of the partner purchasing, is presumptively fraudulent as to the firm creditors, and the courts should set aside such sale, and distribute the property as firm property to the payment of the firm debts.

Third—If the legal effect of such transfer would be to change the order of payment and prefer certain creditors, the private creditors over the firm creditors, it would be void as creating a preference contrary to the provisions of section 35, of the bankrupt act.

I therefore order and adjudge that the sale of Cook to Gleason was fraudulent and void as to firm creditors, and direct that the partnership property and assets of the firm of Cook & Gleason be distributed as partnership effects and to the payment of the firm debts as provided by law.

I further order and adjudge that the store and lot, for the purpose of distribution, are to be treated as a part of the firm assets, and that the judgment of the petitioner was not and did not become a lien thereon by the sale of Cook to Gleason, and that the petitioner Davis has no lien or claim upon said fund by virtue thereof, and that her judgment is not payable out of the firm effects of Cook & Gleason until after the payment of all the debts of said firm.

And the petition and motion of said Davis is denied.

Consult In re Munn [Case No. 9,925]; In re Knight [Id. 7,880].