A. J. MANNEN, *as Sheriff of Wilson County*, v. M. BAILEY.

1. CHATTEL MORTGAGE — *Attachment* — *Rights of Mortgagee* — *Burden of Proof.* In an action brought by a mortgagee of a stock of merchandise against a sheriff who had levied on a portion thereof under an attachment, where it appears that the plaintiff has taken possession and disposed of all of the balance of the stock except that attached by the sheriff, it is incumbent on the plaintiff to account for the property sold by him before he can recover.

2. QUESTION FOR JURY — *Error.* Where it is admitted that the plaintiff, as such mortgagee, took possession of and sold a portion of the mortgaged property, and where it is also claimed by the defendant that the property so sold was sufficient in value to discharge the mortgage debt, it becomes a question of fact for the jury to determine from the evidence whether or not the debt has been paid, and how much, if anything, is due thereon; and it is error for the court to assume that there is a balance due the plaintiff exceeding the value of the goods attached by the sheriff.

3. INSTRUCTIONS — *Harmless Error.* A statement made by the trial judge to the jury, in his charge, which goes too far, and which might in some cases be erroneous, will not be ground for reversal of the judgment where it clearly appears that it has not affected the main contention of the parties, and has not prejudiced the rights of the unsuccessful party.

*Error from Wilson District Court.*

THE nature of the action and the facts are fully stated in the opinion. Plaintiff *Bailey* had judgment, and defendant *Mannen* comes to this court.

*J. B. Ziegler*, for plaintiff in error:

1. An insolvent partnership cannot legally appropriate the firm property by mortgage to the payment of the antecedent debt of one of the members. We find no fault with the opinion of our supreme court as expressed in *Woodmansie v. Holcomb*, 34 Kas. 35, so far as the powers of a solvent partnership are concerned. But when the partnership is confessedly insolvent, as in the case at bar, and when the entire assets of the firm, consisting almost wholly of goods purchased on credit, are attempted to be appropriated in payment of the

individual debt of one of the members, we urge that a different rule prevails. *Berkley v. Tootle*, 46 Kas. 335. The case at bar presents a different state of facts, and calls for a different application of the rule relating to appropriation and disposition of partnership property. These mortgages were given in contemplation of insolvency, to give an improper preference. The execution of the deed of assignment was merely a consummation of the scheme. For these reasons, the mortgages should be held void. *Bank v. Sprague*, 20 N. J. Eq. 13. See, also, *Wilson v. Robertson*, 21 N. Y. 587; *The State v. Day*, 34 Cent. L. J. (Ind.) 137; *Burtus v. Tisdall*, 4 Barb. 571; *In re Cook*, 3 Biss. 122; *Ransom v. Van Deventer*, 41 Barb. 307; *Collins v. Hood*, 4 McLean, 186.

2. There was no consideration to uphold the mortgage in this case. · This mortgage was given wholly for the purpose of securing the antecedent debt of C. A. Dunakin; and M. Bailey cannot be held to be a mortgagee in good faith, or a purchaser for value. 2 Am. Lead. Cas., 5th ed., p. 233; *McGraw v. Henry*, 47 N. W. Rep. 345, and cases cited; *Edson v. Hudson*, 47 id. 347.

3. The mortgage was executed for the purpose and with the intent upon part of the grantors to hinder and delay and defraud their creditors, and M. Bailey had actual knowledge of such fraudulent intent and purpose, and actively participated therein. *Wafer v. Harvey County Bank*, 46 Kas. 597; *Winstead v. Hulme*, 32 id. 568; *Leser v. Glaser*, 32 id. 546.

4. The jury was not warranted in finding any money yet due defendant in error on his note.

5. A mortgage given by insolvents, who at about the same time and as a part of the same transaction execute a deed of assignment, is an unlawful preference, and cannot be upheld against attaching creditors. Under the evidence, the execution of these mortgages and the two deeds of assignment must be held to be a simultaneous and continuous act, and brought about by the active efforts of the mortgagee. *Hardware Co. v. Implement Co.*, 47 Kas. 423.

6. The court erred in its instructions to the jury.

*A. S. Lapham*, for defendant in error:

1. The claim of plaintiff in error, that "An insolvent partnership cannot legally appropriate the firm property by mortgage to the payment of the antecedent debt of one of its members," is against the weight of authority and late decisions of this court. See *Woodmansie v. Holcomb*, 34 Kas. 35; *Berkley v. Tootle*, 46 id. 335; *Sigler v. Knox County Bank*, 8 Ohio St. 511; *Huiskamp v. Wagon Co.*, 121 U. S. 310; *Jewett v. Meech*, 101 Ind. 289; *George v. Wamsley*, 64 Iowa, 175; *Fisher v. Syfers*, 109 Ind. 514; *Goudy v. Werbe*, 117 id. 164; *Purple v. Farrington*, 119 id. 164.

2. That the consideration was full and adequate, see *Purple v. Farrington*, 119 Ind. 164. The cases referred to by plaintiff in error to sustain this claim related only to contests between mortgagees or other lienholders.

3. The third claim of the plaintiff in error is, that the mortgage was executed by the mortgagors to hinder, delay and defraud their creditors, and that M. Bailey had actual knowledge of such fraudulent intent, and actively participated therein. This was the main question submitted to the jury. Their verdict was in favor of M. Bailey, which was approved by the trial court. In such cases, it is a familiar rule that, where there is any sufficient evidence, the verdict will be upheld by the supreme court. The facts in the case of *Wafer v. Harvey Co. Bank*, 46 Kas. 597, cited by plaintiff in error, were different in every respect from the facts in this. In that case the stock mortgaged to the bank had been obtained by fraudulent means, so found by the jury, and the cashier of the bank had made false statements in regard to the financial condition of the mortgagor.

4. Plaintiff in error claims that the jury were not warranted in finding any money yet due Bailey on his note. The testimony on this was ample to sustain the verdict. Bailey testifies that he received $2,081.25. This would still leave $918.75 due on the principal of the note, which was nearly $100 more than the value of the goods.

5. Plaintiff in error also claims that the execution of the mortgage and deed of assignment were one continuous transaction. The evidence shows that they were entirely separate and independent. The giving of the mortgage and deed were in no sense simultaneous. *Bailey v. Manufacturing Co.*, 32 Kas. 73.

6. On the part of the Dunakins, it was simply the preference of one creditor over another, and that the largest one. As was said by this court in the case of *Randall v. Shaw*, 28 Kas. 421, "It is well settled that a debtor has the right to prefer one creditor over another, and that the vigilant creditor is entitled to the advantage secured by his watchfulness and attention to his own interests." M. Bailey acted in good faith all the way through; the jury so decided; the trial court approved the verdict, and its judgment should be affirmed.

The opinion of the court was delivered by

ALLEN, J.: This action was brought by Bailey against Mannen to recover the value of certain goods which had been levied on by Mannen, as sheriff, and which Bailey claimed as mortgagee of the firm of C. A. Dunakin & Co., which was a partnership composed of C. A. Dunakin and A. N. Dunakin. The business of the firm was carried on at Fredonia, under the personal supervision of A. N. Dunakin, under an agreement, by the terms of which C. A. Dunakin was to furnish the capital, and A. N. Dunakin was to have what is denominated a working interest — to bear half the expenses of conducting it and to receive half the profits. The chattel mortgage under which the plaintiff claims was given to secure a note for $3,000, executed by C. A. Dunakin alone. The evidence shows that C. A. Dunakin had borrowed largely from the plaintiff, and been indebted to him for many years; that when the business was first started at Fredonia many goods were supplied by C. A. Dunakin, who also had a store at Chanute. Remittances from sales made at Fredonia were made to C. A. Dunakin, at Chanute, from time to time. The evidence fails to show, definitely, the state of accounts between

C. A. Dunakin and the firm of A. N. Dunakin & Co., but
C. A. Dunakin estimates a balance due him of about $3,000.
The chattel mortgage was dated December 19, 1887, and was
given to secure a note executed by C. A. Dunakin to Bailey,
dated December 28, 1887, payable on demand, with 12 per
cent. interest. Bailey immediately took ˙ possession of the
goods under his chattel mortgage, and proceeded to dispose
of the same. On the next day after the mortgage was exe-
cuted, C. A. Dunakin & Co. made an assignment of all their
property. All of the goods described in the chattel mortgage,
except those levied on by the sheriff, were disposed of by
Bailey's agents. The only testimony with reference to the
amount received from the disposal of these goods, and the ex-
penses of selling them, is Bailey's statement as to the net
amount received by him and credited on the note. There is
evidence tending to show that the goods were fairly worth
enough to pay Bailey's claim, after taking out the goods at-
tached by the sheriff.

The principal question in the case arises on the instructions.
The court, among other things, instructed the jury as follows:

"You are instructed in the first place that the mortgage of
Bailey, which has been read in evidence, is regular upon its
face, and that the firm of Dunakin & Co. had the legal right
to execute this mortgage to secure the payment of the indebt-
edness mentioned therein.

"The extent of the interest of the plaintiff in these goods is
the amount of the mortgage debt which is yet unpaid, and
evidence has been introduced which will indicate to you the
amount, but it has been agreed among counsel that, in the
event you should find for the plaintiff, that in no event shall
the verdict of the jury be for a greater sum than $820.55,
which the parties have agreed shall be taken as the value of
the goods that the sheriff took, and I take it for granted that
the balance of the debt of the plaintiff exceeds that sum."

The first claim of the plaintiff in error to which our at-
tention is called is, that an insolvent partnership cannot legally
appropriate the firm property by mortgage to the payment of
the antecedent debt of one of the members. In support of

this proposition, our attention is called to the following cases: *Bank v. Sprague*, 20 N. J. Eq. 13; *Wilson v. Robertson*, 21 N. Y. 587; *Menagh v. Whitwell*, 52 id. 146; *The State v. Day*, 34 Cent. L. J. 137; *Burtus v. Tisdall*, 4 Barb. 571; *In re Cook*, 3 Biss. 122; *Ransom v. Van Deventer*, 41 Barb. 307; *Collins v. Hood*, 4 McLean, 186. We have carefully examined these cases, and find that some of them, particularly the New York cases, go to the length of holding that the appropriation by an insolvent firm of partnership property to the payment of the individual debt of one partner is a fraud on the partnership creditors. On the other hand, our attention is called to *Sigler v. Knox County Bank*, 8 Ohio St. 511; *Huiskamp v. Wagon Co.*, 121 U. S. 310; *Jewett v. Meech*, 101 Ind. 289; *George v. Wamsley*, 64 Iowa, 175; *Fisher v. Syfers*, 109 Ind. 514; *Goudy v. Werbe*, 117 id. 164; *Purple v. Farrington*, 119 id. 164; and also to the following cases decided by this court: *Woodmansie v. Holcomb*, 34 Kas. 35; *Berkley v. Tootle*, 46 id. 335.

We do not deem it necessary to now decide the question whether an insolvent partnership may, with the consent of all the partners, lawfully appropriate the partnership property to the payment of a debt of an individual member of the firm. In this case it appears that C. A. Dunakin was to furnish all the capital, and did in fact furnish the same, except so far as it was obtained on the credit of the firm; and it also appears from the evidence, though not in an entirely satisfactory manner, that about the amount of this chattel mortgage so furnished by him had been obtained from Bailey. Within the authority of *Berkley v. Tootle*, above cited, we think it not inequitable that the firm should be permitted to secure this indebtedness with the partnership property. If the jury find the transaction free from actual fraud, we think the mortgage should be upheld. While the instruction given goes further than we think was necessary in this case, we are not prepared to say that it is erroneous. The other instruction quoted is more difficult to uphold. The plaintiff had taken possession of this stock of goods, and

**3. Instructions— harmless error.**

had disposed of all of it, except that part attached by the sheriff. Before he can recover in this action, he must show that he has been injured by the action of the sheriff. If the goods which were left in his possession were sufficient to satisfy his debt, he has no ground of complaint. It appears that all these goods were sold. The facts as to the amount realized from sales and as to the expenses incurred in disposing of the goods were peculiarly within the knowledge of the plaintiff, and we think it incumbent apon him to satisfactorily account for them. The plaintiff testified as follows:

1. Chattel mortgage—attachment—rights of mortgag-e— burden of proof.

"Ques. Do you know how much money was received from the sale of goods in Fredonia? Ans. No, I can't state exactly.

"Q. Do you know what was the value of the stock of goods on which you held the mortgage in Fredonia? A. No, I do not.

"Q. You do not know, do you, whether you got all the money that was received from those goods or not? A. I do, unless I was swindled by somebody.

"Q. All you know about it is what you received? A. That is all I know.

"Q. And what you credited upon that note? A. That is all I have actual knowledge of individually, alone. I know what my instructions were.

"Q. Do you know what amount of expenses are charged up in the collecting of $2,000? A. I cannot tell; it is in the bank book of the Wilson County Bank. I can tell from the memorandum.

"Q. Then in placing the credit upon the note, you simply credited the note for such amount as came to your hands? A. Yes, sir; the two credits are all.

"Q. The $2,000 and $81.25? A. That is the total amount I got.

"Q. What other moneys were received you do n't know? A. No, I cannot tell from memory; it is a matter of record in the bank book."

The goods were disposed of by agents of the plaintiff, and none of them made any more definite statement than the plaintiff himself. A. N. Dunakin was sworn on behalf of

the defendant, and testified that he had been in charge of the business at Fredonia to the time it was closed, and that in his judgment, on the 10th day of December there was $5,000 or $6,000 worth of goods in the stock. In view of the issues presented, and of all of the evidence in this case, I think the expression used by the trial court, " I take it for granted that the balance of the debt of the plaintiff exceeds that sum," in the last instruction quoted, was misleading. The question as to whether any balance was due on the plaintiff's note was one peculiarly within the province of the jury to determine. While the value of the goods taken by the sheriff was agreed upon, there was no agreement that any balance was due, nor was it conceded that the plaintiff was acting in good faith in the matter, or had any valid claim whatever which he ought to enforce as against the creditors of the firm of A. N. Dunakin & Co. The statement of the court implied that the claim of the plaintiff was valid, and that it had not been satisfied. It implied that the plaintiff had fairly disposed of the goods taken by him under his chattel mortgage, and had accounted for the net amount received by him applicable to the discharge of his note. All these matters should have been left to the jury, unham-

2. Question for jury — error. pered by any assumption or expression of opinion on the part of the court. It seems to me that there is material error in this portion of the charge. The question of fraud, aside from the expression contained in this portion of the instructions, seems to have been fairly submitted to the jury. We deem it unnecessary to consider separately the other assignments of error, but find no other material error in the case.

JOHNSTON, J.: I fail to find anything prejudicial in the statement made by the trial judge to the jury, that " I take it for granted that the balance of the debt of the plaintiff exceeds that sum." The main contention in the trial was the honesty and good faith of the parties in giving and taking

29—51 KAS.

the chattel mortgage. The debt of Bailey secured by the mortgage was shown to be *bona fide*. He had a right to obtain security and a preference over other creditors. The mortgage was regular and valid upon its face, and the jury has found upon sufficient evidence that it was honestly obtained, without any intent to hinder and delay the creditors of the Dunakins. As stated, the greater part of the evidence and the efforts of counsel on both sides was directed to this issue, rather than to the disposition that had been made of the property since possession had been taken under the mortgage. The property taken under the mortgage, excepting that which was attached, appears to have been sold in a businesslike way, and the proceeds of the sale applied on payment of the debt. The debt amounted to more than $3,000. The sum realized on the sale of the mortgaged property was $2,081.25. While a detailed statement of the gross sales and the expenses in making the same was not produced, the testimony of Bailey is that the business was conducted in a businesslike way, and all that was realized upon the goods was credited upon the debt. If there had been any serious question as to the truth of his testimony, the detailed statement was near at hand and could have been produced. The property was sold in the manner authorized by the mortgage, and, in the absence of testimony that the property was sacrificed or that excessive charges were made in the sale, the jury was warranted in its conclusion that the mortgagee had satisfactorily accounted for the property taken under the mortgage. In assuming that the balance of the debt due to Bailey exceeded the value of the goods attached, the court may have gone too far, but it does not seem to me that it can be regarded as prejudicial error. As the testimony stood, there was about $1,000 debt remaining due, and it was agreed that the value of the goods attached was $820.55. As I view the record, there is not sufficient controversy upon this point to make the assumption of the fact that the balance of the debt exceeded the latter sum a material error, and nothing less is sufficient ground for reversal.

With the exception of the comments made upon this statement or assumption, I fully concur in all that is said in the foregoing opinion of Mr. Justice ALLEN.

The judgment will be affirmed upon the opinion of the majority of the court.

HORTON, C. J., concurring.