No. 52,937

WESTGATE STATE BANK, *Plaintiff-Appellant,* v. CHARLES K. CLARK, JR., and BARRY B. CLARK, *Defendants-Appellees.*

(642 P.2d 961)

Opinion filed April 3, 1982.

*James F. McMahon,* of McConnell & McMahon, of Overland Park, argued the cause, and *Steven R. McConnell,* of the same firm, was with him on the brief for the appellant.

No appearance by the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a creditor bank to

recover a deficiency judgment against two debtors after the repossession and private sale of two recreational vehicles (RV) which had served as collateral for the loan. The plaintiff-creditor is Westgate State Bank which we will refer to in the opinion as plaintiff or the bank. The debtor-defendants are Charles K. Clark, Jr. and Barry B. Clark. We will refer to them as the debtors or the defendants.

The facts in the case are not really in dispute and essentially are as follows: The defendants Clarks were engaged in the business of renting recreational vehicles to the general public under the name of R.V. Enterprises, Lenexa, Kansas. The defendants entered into a loan and security agreement with the plaintiff bank on June 21, 1977. The amount of the promissory note was $39,459.42, and the defendants furnished two 1976 Cruise Air Motor Homes as security for the loan. Thereafter, problems arose when the defendants failed to make timely payments on their note. On October 17, 1977, the bank sent the defendants a notice of right to cure on the basis of the defaults. On October 9, 1979, the bank repossessed the two Cruise Air Motor Homes. The following day, October 10, 1979, the bank sent a notice to each defendant by registered mail. Each notice in substance advised the defendants that the bank had repossessed the vehicles on October 9, 1979, and reminded the defendants that the right to cure notice had been sent to them on October 17, 1977, some two years prior to the repossession. The notices advised the defendants that the loan balance due at that time was $22,317.54 and that in ten days from that date the vehicles would be sold to the highest bidder and a lawsuit would be commenced without further notice against them to recover the difference between the balance due and the highest bid received. The notice specifically advised each defendant that he had ten days to contact the bank and that they should talk to a certain named employee of the bank.

Thereafter, the bank sold the two RVs by private sale to the highest bidder on each vehicle. The sale price on each vehicle was $5,000. The bank then filed this action to recover the cost and expenses of repossession and sale and for the deficiency which resulted from the sale of the RVs at a price less than the outstanding debt. The defendants filed an answer alleging that the sale of the RVs by the bank was not done in a commercially

reasonable manner and the highest possible price was not secured. The defendants further alleged that the RVs were not properly prepared for sale and that notice of sale was not given to the defendants. The case then proceeded to trial.

At the trial, each of the parties called one witness. The bank presented the testimony of its consumer loan officer who identified the promissory note and security agreement. The loan officer did not supervise the loan in the beginning and was simply the custodian of the records. He testified as to collection problems arising in connection with the loan and that a right to cure notice was sent to the defendants on October 17, 1977. The bank tried to collect the account for two years and finally in October of 1979 repossessed the two RVs. The loan officer identified the repossession notice which was sent to each of the defendants by registered mail advising them that the RVs would be sold to the highest bidder after ten days. He testified that neither of the defendants responded to the notice. He testified that after repossession by the bank, the two RVs were taken to Keith's Camper Sales on Leavenworth Road in Kansas City, Kansas, to prepare them for sale. Certain expenses and charges were incurred in winterizing the vehicles and preparing them for sale. These charges were added to the balance due on the note.

Prior to the sale, employees of the bank by telephone called various people who they thought might be in the market for the two RVs. The homes were in average condition, according to the loan officer, and prospective buyers had the opportunity to inspect them at Keith's Camper Sales and then make bids at the bank. A total of six bids were received on the two RVs. Each of the homes was purchased for a bid price of $5,000. On cross-examination, the loan officer testified that he did not know the exact number of people who were contacted about the sale; there were five or six he knew of. After the sale in this case, he never advised the defendants as to the sales price or the amount of the deficiency prior to the suit being filed. He did not know how much the vehicles were worth retail. He did not consider a wholesale block sale in this case because that would cost a fee. There was not public advertising about the sale because of the cost involved. On re-cross-examination, he testified that the notice the bank sends to debtors does not tell the debtor how to bid or the place or hour of the sale. The bank then rested its case.

The only witness presented in support of the defense was the defendant, Charles K. Clark, Jr. He testified that the vehicles were in very good condition and fully equipped and air conditioned and that eight people could sleep in each of the vehicles. Each of the vehicles had been driven 90,000 miles but the engines and drive trains were in excellent condition. Both were 1976 models. The defendants were in the business of renting mobile homes and had previously advertised the homes for sale. They started out by setting a price at $12,000 each but were unable to sell them. At $9,000 each, they were a good buy. At $5,000 each, they were given away. Defendant testified that they had numerous offers for each vehicle in the area of $7500 which they did not accept at the time. Clark further testified that he assumed that the bank would sell the homes at wholesale. If he would have known the homes were to be sold for only $5,000 each, he would have called his contacts in the area. He stated that he had not heard of any of the persons who actually bid. Defendant, on cross-examination, testified that when he got the letter notice from the bank, he filed it. He did not write or call the bank. He assumed that the RVs would be wholesaled, possibly at a place in Belton, Missouri, which has a special sale once a month for RVs. On redirect, he testified that, when defendants were engaged in the RV business they rented out vehicles up to a maximum of nine at a time. They were in the RV business about three years all together.

At the close of the hearing the trial court made brief findings of fact and entered judgment in favor of the defendants. In its findings, the court noted the promissory note and security agreement dated June 21, 1977, that defaults in payments had been made by the defendants, and that the right to cure was sent by the plaintiff in October of 1977. The court also found that notice of sale and repossession was sent by the bank to each defendant in October of 1979; that the bank by word-of-mouth notified five or six persons that the two RVs were for sale; and found that the bank incurred some costs in maintenance and repair after repossession but prior to sale. The court then concluded that the word-of-mouth solicitation of bids was not sufficient to meet the requirements of K.S.A. 16a-5-103 (Ensley) under the Kansas Uniform Consumer Credit Code (UCCC) as a matter of law. The court further stated that, since the bank did not dispose of the goods in good faith and in a commercially reasonable manner, as

a matter of law the bank was not entitled to judgment for a deficiency. The trial court then entered judgment in favor of the defendants. The court erroneously relied on the provisions of K.S.A. 16a-5-103, a provision of the UCCC which will be discussed later.

On December 10, 1980, the bank's motion for a new trial was heard by the court. At that hearing, the trial court was advised for the first time that the provisions of the UCCC were not applicable to the sale, since the defendants, as purchasers engaged in a commercial enterprise, were not consumers as defined in the UCCC. The court then concluded that comparable provisions of the Uniform Commercial Code (UCC) were applicable which precluded, as a matter of law, a deficiency judgment by a secured creditor who repossesses the collateral in any case where the sale of the collateral was not conducted in a commercially reasonable manner. The trial court then modified its findings to show that the transaction was covered by the UCC, not the UCCC, but adhered to its prior findings that the sale of the collateral was not conducted in a commercially reasonable manner. The plaintiff bank has appealed from the judgment of the district court entered in favor of the defendants.

At the outset, it should be stated that the district court was correct in holding that K.S.A. 16a-5-103 (Ensley) of the Uniform Consumer Credit Code was not applicable in determining the rights of the parties in this case. That section, which places a restriction on the right of a secured creditor to secure a deficiency judgment against the debtor, provides in part as follows:

"(1) This section applies to a deficiency on a consumer credit sale of goods or services and on a consumer loan in which the lender is subject to defenses arising from sales (section 16a-3-405); *a consumer is not liable for a deficiency unless the creditor has disposed of the goods in good faith and in a commercially reasonable manner.*" (Emphasis supplied.)

It is important to note that under K.S.A. 16a-5-103 a consumer is not liable for a deficiency judgment as a matter of law unless the repossessed creditor has disposed of the goods in good faith and in a commercially reasonable manner. That section is not applicable in this case because the loan was not a consumer loan as defined by K.S.A. 16a-1-301(13). To have a consumer loan, the debt must be incurred by a person, primarily for personal, family, or household purposes. In this case, it was undisputed that the

debt was incurred for the purpose of renting out the vehicles as a part of a business enterprise. Hence, the UCCC was clearly not applicable.

This case is, therefore, controlled by the provisions of the UCC and requires us to examine certain of its provisions. In particular the following should be noted:

K.S.A. "84-1-102. **Purposes; rules of construction; variation by agreement.** (1) This act shall be liberally construed and applied to promote its underlying purposes and policies.

"(2) Underlying purposes and policies of this act are:

"(a) to simplify, clarify and modernize the law governing commercial transactions;

"(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

"(c) to make uniform the law among the various jurisdictions.

"(3) The effect of provisions of this act may be varied by agreement, except as otherwise provided in this act and except that *the obligations of good faith, diligence, reasonableness and care prescribed by this act may not be disclaimed by agreement* but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable." (Emphasis supplied.)

K.S.A. "84-1-106. **Remedies to be liberally administered.** (1) The remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but *neither consequential or special nor penal damages may be had except as specifically provided in this act or by other rule of law.*

"(2) Any right or obligation declared by this act is enforceable by action unless the provision declaring it specifies a different and limited effect." (Emphasis supplied.)

K.S.A. "84-9-503. **Secured party's right to take possession after default.** Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under section 84-9-504."

K.S.A. 1981 Supp. "84-9-504. **Secured party's right to dispose of collateral after default; effect of disposition.** (1) *A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.* . . .

. . . . .

"(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. But if the underlying transaction was a sale of accounts

or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

"(3) *Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale." (Emphasis supplied.)

K.S.A. "84-9-507. **Secured party's liability for failure to comply with this part.** (1) If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. *If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.* If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price.

"(2) *The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.* The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable." (Emphasis supplied.)

There are two basic issues presented by the bank on this appeal:

(1) Whether the district court erred in barring the plaintiff bank

from recovery of a deficiency judgment, *as a matter of law,* after the court found the bank had disposed of the two RVs in other than a commercially reasonable manner?

(2) Whether the district court erred in finding the private sale of the two RVs with only a telephone solicitation for bids and without advertising to the general public was not a commercially reasonable sale?

The first issue we now address is one of first impression in the Kansas appellate courts. At the trial, the defendants contended, and the district court held, that a sale of the collateral in other than a commercially reasonable manner bars the secured creditor from recovering any deficiency judgment as a matter of law. The issue presented has caused a great deal of controversy in the courts throughout the country. There are two approaches which have been taken by the various courts. One line of cases takes the view that, if the secured creditor fails to give the required notice or sells other than at a commercially reasonable sale, the creditor is barred from obtaining a deficiency judgment as a matter of law. The second line of cases holds that the secured creditor is not barred as a matter of law, but that there is a rebuttable presumption that the value of the collateral was worth the unpaid balance of the debt. In addition, the debtor is entitled to have the trier of fact calculate the damages which he suffered as a result of the unreasonable conduct and to have that amount set off against the amount the creditor would otherwise be entitled to recover. This issue is the subject of a comprehensive annotation which may be found in 59 A.L.R.3d 401, where the cases supporting each position are set forth. As pointed out above, there are no Kansas state cases on this issue. We note, however, that there are two Kansas federal cases which have followed the rebuttable presumption rule. *Barbour v. United States,* 562 F.2d 19 (10th Cir. 1977); *Transport Equipment Co. v. Guaranty State Bank,* 518 F.2d 377 (10th Cir. 1975).

A recent and excellent articulation of the rule that a deficiency claim should be automatically eliminated as a matter of law where the creditor misbehaves is *Wilmington Trust Co. v. Conner,* 415 A.2d 773 (Del. 1980). In adopting this rule, the Delaware Supreme Court focused on the following arguments:

(1) The Uniform Conditional Sales Act, which was replaced by article 9, had been previously construed to make

compliance with its terms a condition of recovering any deficiency.

(2) The recovery of any "loss" under § 9-507 (1) is not an exclusive remedy and failure of the drafters of the UCC to include any provision barring a deficiency does not indicate an intent to deny that remedy by negative implication.

(3) The UCC contains several suggestions, particularly in §§ 1-103 and 1-106, that remedies should be construed liberally.

(4) Barring a deficiency claim is not punitive when compliance with article 9 is looked at as a condition precedent to recovery of the claim.

A recent case, which presents the arguments in favor of the rule that creditor misbehavior merely shifts the burden to the creditor to show that the misbehavior was not prejudicial, *i.e.,* that the unpaid balance of the debt exceeds the fair market value of the collateral, is *Valley Min. Corp., Inc. v. Metro Bank,* 383 So. 2d 158 (Ala. 1980). That case holds that if a creditor fails to dispose of the collateral in a commercially reasonable manner, this does not result in the creditor's absolute forfeiture of its right to a deficiency judgment, but only requires a reduction of the claimed deficiency by the amount of any loss to the debtor resulting from any such failure. In refusing to bar a deficiency judgment as a matter of law, the Alabama Supreme Court enumerated the following considerations in favor of its position:

(1) Section 9-504 (UCC) allows a deficiency claim by its express terms and says nothing about eliminating the claim because of creditor misbehavior, in sharp contrast to § 2-706, which strongly suggests that a seller of goods must give notice of resale to a defaulting buyer as a condition of obtaining any deficiency.

(2) Eliminating the deficiency altogether for creditor misbehavior runs contrary to the UCC's philosophy to do away with rigidity.

(3) The keynote of § 9-504 is commercial reasonableness, which cuts against the total-elimination approach.

(4) Snuffing out the deficiency claim conflicts with the policy of § 1-106, which allows full compensation to an aggrieved party but seeks to avoid penal damages.

(5) Most important, the drafters in § 9-507(1) occupied the field when they provided for recovery of "any loss" and a minimum civil penalty covering consumer goods.

For a similar rationale, see *Hall v. Owen Co. State Bank, et al.,* 175 Ind. App. 150, 370 N.E.2d 918, 926-28 (1977), *rehearing denied* (January 20, 1978).

We have considered these two lines of cases and have concluded that the Kansas courts should distinguish between consumer transactions under the UCCC and nonconsumer transactions under the UCC. In consumer transactions, where there is creditor misbehavior such as failure to sell in a commercially reasonable manner, a claim for a deficiency judgment is absolutely barred. K.S.A. 16a-5-103 specifically so provides. When, however, the debtor is a *commercial* entity, the Kansas courts should use the rebuttable presumption approach. It cannot be denied that the more sophisticated debtor is in a better position to grapple fairly with the creditor as to whether the sale was commercially reasonable or whether the unpaid balance of the debt exceeds the fair market value of the collateral. Furthermore, since the legislature did not see fit to include in the UCC, K.S.A. 84-1-101 *et seq.,* an express provision barring absolutely a deficiency judgment in cases of creditor misbehavior, the courts should hesitate to adopt such a rule. We further are impressed by the philosophy of the UCC which emphasizes good faith and reasonableness on the part of the parties with a view of avoiding penalty damages.

To summarize, we hold as follows: Where a secured creditor sells the collateral in other than a commercially reasonable manner, the secured party is not absolutely barred from recovering a deficiency judgment from the debtor as a matter of law. In an action brought by a secured creditor for a deficiency judgment after a sale of the collateral in other than a commercially reasonable manner, there is a rebuttable presumption that the value of the collateral was equal to the unpaid balance of the debt and the burden of showing otherwise is on the secured creditor. The debtor is entitled to have the trier of fact calculate the damages which he suffered as a result of the unreasonable conduct and to have that amount set off against the amount the creditor would otherwise be entitled to recover.

The second issue presented is whether the trial court erred in finding, on the evidence presented, that the sale of the RVs was not a commercially reasonable sale? We must first emphasize the generally accepted rule that, where a secured creditor brings an action for a deficiency judgment after sale of the collateral, the burden of proof as to the commercial reasonableness of the sale is on the plaintiff creditor. See 69 Am. Jur. 2d, Secured Transactions § 623, pp. 530-31, and the cases cited in an annotation on the subject at 59 A.L.R.3d 369. This rule was followed in *Transport Equipment Co. v. Guaranty State Bank,* 518 F.2d 377. This rule is consistent with prior decisions of this court holding that, where a creditor repossesses and disposes of the collateral, it is incumbent on the creditor to account for the collateral sold by him before he can recover a deficiency. *Mannen v. Bailey,* 51 Kan. 442, 32 Pac. 1085 (1893).

Unfortunately, the UCC does not specifically define the term "commercially reasonable." Because the statutory definition of a commercially reasonable sale is vague, the cases generally hold that a factual determination as to whether a sale was commercially reasonable must depend on the particular facts of each case. See *Hall v. Owen Co. State Bank, et al.,* 175 Ind. App. 150. We agree that the determination of the issue whether a sale was held in a commercially reasonable manner is a question of fact to be determined in each particular case by the trier of fact, and that, in an action for a deficiency judgment, the secured creditor has the burden of proof to show that the disposition or sale of the collateral was made in a commercially reasonable manner.

In deciding whether or not the sale of the collateral was accomplished in a commercially reasonable manner, the trial court should consider all of the relevant factors together as a part of a single transaction. As pointed out by the court in *In Re Zsa Zsa Limited,* 352 F. Supp. 665 (S.D.N.Y. 1972):

"It is the aggregate of circumstances in each case—rather than specific details of the sale taken in isolation—that should be emphasized in a review of the sale. The facets of manner, method, time, place and terms cited by the Code are to be viewed as necessary and interrelated parts of the whole transaction." p. 670.

In the reported cases on the subject, there are many factors suggested to be considered by the courts in determining whether the collateral was sold in a commercially reasonable manner. It

should be noted, for example, that in section 2 of K.S.A. 84-9-507 some suggestions are made which should be considered in the determination of commercial reasonableness: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either *sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.*" That section also suggests that a disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable.

There is an excellent discussion on the factors to be considered in determining the commercial reasonableness of a sale in a treatise by Barkley Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* (1980). In section 4.8, Professor Clark points out some of the elements of commercial reasonableness. He notes that some factors, such as notice, are specifically provided in K.S.A. 84-9-504(3). Other factors appear as recurrent themes in the decided cases. He suggests the following list of factors to be used as a checklist by a creditor foreclosing under Article 9 of the UCC:

(1) *The duty to clean up, fix up, and paint up the collateral.* It is suggested that, if the cost of preparing the collateral for sale is small in comparison to the additional price it is likely to generate, the creditor should spend the extra money. Cases are cited holding that washing and cleaning up consumer goods or equipment may be the only commercially reasonable thing to do in order to generate bidder interest at the sale.

(2) *Public or private disposition.* Article 9 gives to the secured party an option to sell the property either at public or private sale. Comment 1 to § 9-504 suggests that a private sale should be used whenever such a disposition is likely to result in a higher return. Which type of sale is the more commercially reasonable action to take in a particular case must

be determined from the nature of the collateral and the other factual circumstances.

(3) *Wholesale or retail disposition.*

In many cases, a retail sale of the goods will command a much higher price; however, a retail sale may involve more expenses and usually will take much longer to conclude. This in turn may not be reasonably feasible in view of higher storage expense and higher interest accumulation on the obligation. In some cases, a sale to a dealer on the wholesale market may be the more reasonable approach. Sales to a dealer seem to be suggested under § 9-504 and the official comments under that section and also in the official comment to § 9-507(2) which suggests that sale of repossessed collateral through a dealer may be the better method in the long run since the secured party does not usually maintain his own facilities for making such sales. The answer to the question whether a sale on the retail or wholesale market is commercially reasonable must generally depend upon the circumstances of each particular case and, therefore, is a question of fact for the factfinder to determine.

(4) *Disposition by unit or in parcels.*

K.S.A. 84-9-504(3) provides that disposition "may be as a unit or in parcels." Several cases have imposed a duty on the secured party to dispose of certain items of collateral on a piecemeal basis, if a higher price would be likely under such a disposition. Professor Clark suggests that in all cases the secured party should weigh the possible higher realization from piecemeal disposition against the higher cost of multiple sales. Much depends on the nature of the collateral.

(5) *The duty to publicize the sale.*

One of the most important elements of commercial reasonableness is the duty to surround the sale with publicity sufficient to attract a "lively concourse of bidders." In publicizing a foreclosure sale, the exact time, place, and terms of a public sale should be published. A number of cases hold that if the collateral is equipment, individual consumer goods, or farm goods, there is a duty to provide prior inspection of the collateral for interested purchasers. Failure to allow prior inspection may influence the court to conclude in a particular case that the sale was not commercially reasonable.

(6) *Length of time collateral held prior to sale.*

Professor Clark points out cases holding that a sale was not

commercially reasonable because the secured parties acted too hastily by failing to take the time to advertise so that additional bidders could have been encouraged. On the other hand, holding the collateral for an extended period of time may be considered as undue delay, causing the collateral to be sold at other than a fair price.

(7) *Duty to give notice of the sale to the debtor and competing secured parties.*

K.S.A. 84-9-504(3) imposes upon the secured party a duty to "send" to the debtor "reasonable notification of the time and place of the public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made." Professor Clark suggests that the purpose of notification is both to protect the debtor's right of redemption and to enable the debtor to enliven the concourse of bidders by any method. Failure to give proper notice can lead to an action for damages by the debtor against the secured creditor under K.S.A. 84-9-507(1). Because of the conflict in the cases as to whether written notice is required, Professor Clark suggests that the foreclosing creditor should reduce the notification of the sale to writing. As to how far in advance of the sale the notification should be sent to the debtor, the standard around the country seems to be ten days prior to either a public or private sale. Comment (5) of K.S.A. 84-9-504 points out that the term "reasonable notification" is not defined in the act, but it should be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire. If a public sale is involved, the debtor must be told exactly where and when the sale will take place. If a private sale will be held, the notification must be only as to the time after which the sale will be made. However, if the creditor knows specifically the name of the prospective purchaser and the amount of his bid it would be very helpful to the debtor to have such information so that he could better protect himself by exploring other avenues to obtain a better price.

(8) *The actual price received at the sale.*

The cases indicate that the price actually received by the secured party is definitely one of the most important factors to be considered in deciding whether a sale was commercially reasonable. It is expressly provided in K.S.A. 84-9-507(2), however, that the fact

that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not *of itself* sufficient to establish that the sale was not made in a commercially reasonable manner. A relevant factor may be the price received by the buyer of the collateral at a subsequent sale. A showing that the collateral was sold only a short time later at a substantial or disproportionately higher price may strongly imply that the secured party failed to receive a fair price for the collateral. See *Mercantile Financial Corp. v. Miller,* 292 F. Supp. 797 (E.D. Pa. 1968). It has been suggested that the secured creditor obtain an independent appraisal of the collateral *before* the sale, so that only bids near the appraised value will be considered.

(9) *Other factors to be considered.*
Other factors suggested to be considered in deciding whether a sale was commercially reasonable include the number of bids received and the method employed in soliciting bids, particularly in the case of a private sale. In addition, the time and pace of the sale must be such that they are reasonably calculated to bring out a reasonable number of bidders, particularly in the case of a public sale. The above list of suggested factors is not intended to be exclusive and should not prevent a court from considering other relevant factors in a particular case.

As noted heretofore, it is the philosophy of the UCC that the debtor and the secured creditor, in their dealings, should act toward each other in good faith and in a *reasonable* manner. In every case, that should be the ultimate test to be applied by a trial court in determining the issue of commercial reasonableness. Since the issue of commercial reasonableness is usually one of fact, the decision of the trial court will be sustained on appeal when there is substantial, competent evidence to support its findings. This case was tried by the court, sitting without a jury, and the trial court found that the bank did not dispose of the RVs in a commercially reasonable manner, because only five or six bids were solicited by telephone and there was no advertising directed toward the general public. We have considered the testimony of the two witnesses who testified at the trial and have concluded that there is substantial, competent evidence to support the finding of the trial court that the plaintiff bank did not sell the goods in a commercially reasonable manner.

As noted above, this action being one for the recovery of a deficiency judgment by a secured creditor after repossession and sale of the collateral, the burden of proof was on the bank to show that the two RVs were sold in a commercially reasonable manner. The evidence presented by the plaintiff, which has been summarized at the beginning of this opinion, was very skimpy. The plaintiff did not offer testimony as to how the persons making bids were selected or whether they were dealers or private individuals or whether a sale by wholesale or retail would have brought a better price. The bank's loan officer testified that he did not know how much the vehicles were worth retail. It was undisputed that the vehicles were in a very good condition. The defendant testified that his business had numerous offers in the area of $7,500 for each of the recreational vehicles. Under the evidence presented, we cannot say as a matter of law that the plaintiff bank sustained its burden of proof or that the trial court erred in holding that the two vehicles were not sold in a commercially reasonable manner.

The case must be reversed, however, because the district court erroneously held that, where a secured creditor sells the collateral in other than a commercially reasonable manner, the creditor is absolutely barred as a matter of law from securing a deficiency judgment. Under the legal principles which we have adopted, a secured creditor is not barred as a matter of law where the sale of collateral is other than in a commercially reasonable manner, but there is a rebuttable presumption that the value of the collateral is equal to the unpaid balance of the debt, and the secured creditor has the burden of presenting evidence to show to the contrary. In this case, the trial court did not determine the actual value of the two RVs at the time they were sold. Thus, it did not determine whether the plaintiff rebutted the presumption. The case is, therefore, reversed and remanded to the district court with instructions to grant the parties a new trial on the issues as to whether the plaintiff rebutted the presumption that the value of the collateral is equal to the unpaid balance of the debt and whether the defendants are entitled to any damages as a setoff due to the failure of plaintiff bank to dispose of the two RVs in a commercially reasonable manner.

The judgment of the district court is reversed and remanded for a new trial in accordance with the directions set forth in this opinion.