Lewis M. DISCHNER, Appellant,

v.

UNITED BANK ALASKA, Appellee.

No. S–1166.

Supreme Court of Alaska.

Sept. 19, 1986.

---

Martin A. Farrell Jr., Anchorage, for appellant.

Kenneth R. Lamb, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

PER CURIAM.

In *Dischner v. United Bank Alaska*, 631 P.2d 107 (Alaska 1981), we held that United Bank Alaska (UBA) failed to notify Lewis M. Dischner (Dischner) and Jim Rolle (Rolle) of the sale of the collateral, a fleet of twenty-nine cars, as required by AS 45.09.504(c).[1] Since UBA failed to meet the notice requirements of section 504(c), a rebuttable presumption arose that the actual value of the collateral was equal to the amount of the outstanding debt. *Id.*

In *United Bank Alaska v. Dischner*, 685 P.2d 90 (Alaska 1984), we held that UBA effectively rebutted the presumption that the value of the collateral was at least equal to the amount of the outstanding debt. We remanded the case to the trial court to determine the value of the collateral and award a deficiency judgment. *Id.*

On remand, Judge J. Justin Ripley found that the fair market value of the collateral was $86,648.75, which was based upon bluebook wholesale value. The outstanding debt amounted to $147,809.27. Therefore, Judge Ripley awarded UBA a deficiency judgment of $61,160.52.[2] Dischner's appeal followed.

The sole issue before us is whether the trial court erred by valuing the collateral at its wholesale rather than retail value. The determination of whether a sale at retail or wholesale is commercially reasonable depends upon the circumstances in each case and is therefore a question of fact. *Westgate State Bank v. Clark*, 231 Kan. 81, 642 P.2d 961, 970 (1982).

This court will not disturb a trial court's findings of fact unless we are convinced that they are clearly erroneous, which means we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding. *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979) (footnotes omitted).

In our prior decision, we indicated that "[t]here is authority that wholesale market prices are most appropriate in automobile repossession by creditors who are not automobile retailers." 685 P.2d at 93 n. 3, *citing Tauber v. Johnson*, 8 Ill.App.3d 789, 291 N.E.2d 180 (1972); *Westgate State Bank v. Clark*, 231 Kan. 81, 642 P.2d 961 (1982); *Savoy v. Beneficial Consumer Discount Co.*, 503 Pa. 74, 468 A.2d 465 (1983).

The comments to the Uniform Commercial Code § 9–507 suggest that the wholesale market is the appropriate measure when the creditor does not maintain retail facilities.

One recognized method of disposing of repossessed collateral is for the secured

---

1. AS 45.09.504(c) provides in pertinent part:
   Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable noti-

fication of the time and place of a public sale or reasonable notification of the time after which a private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....

2. The proceeds received from the collateral and from UBA's act of renting some of the collateral amounted to $20,150.00. The disputed collateral was valued at $66,498.75 for a total of $86,648.75.

party to sell the collateral to or through a dealer—a method which in the long run may realize better average returns since the secured party does not usually maintain his own facilities for making such sales.

U.C.C. § 9–507, 3A U.L.A. 376 comment 2 (1981).

White and Summers state:

It is axiomatic that retail sales will bring a higher price than sales in the wholesale market, but retail marketing and advertising expenses will also exceed those of the wholesale market. For instance, a bank who attempts large scale resales of repossessed automobiles on the retail market may incur substantial additional expenses which it may seek to add to the deficiency under 9–504(1)(a).

J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, § 26–11 at 1118 (2d ed. 1980). *See also Hall v. Owen County State Bank*, 175 Ind.App. 150, 370 N.E.2d 918, 930 (1977) (a sale to a dealer on the wholesale market will probably be the more reasonable approach in most cases).

Based upon our statements in *Dischner* and the foregoing authority, we conclude that the wholesale market was the proper measure of the cars' fair market value. The court found that the sale of the cars as a fleet was reasonable since they were leased and repossessed as a fleet. UBA did not have the facilities to store or sell the vehicles. Unlike Darrell Mobley, Dischner's expert witness, who testified he could get retail value, UBA is not in the business of dealing, selling or renting cars. Although the cars were not sold to a "dealer," we find that a rental car business such as Payless is analogous to a dealer since both purchase cars in bulk at wholesale.

Therefore, the superior court did not clearly err in finding that the fair market value of the collateral was its wholesale value.

AFFIRM.