Lewis M. DISCHNER, Appellant,

v.

UNITED BANK ALASKA, Appellee.

No. 5008.

Supreme Court of Alaska.

July 17, 1981.

Martin A. Farrell, Jr., Anchorage, for appellant.

Kenneth R. Lamb, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and HODGES, Superior Court Judge.*

OPINION

BURKE, Justice.

This case involves an action for a deficiency judgment on a secured transaction. The trial court awarded plaintiff United Bank Alaska (UBA) a deficiency judgment in the principal amount of $79,301.05, plus attorney's fees and costs. On appeal, defendant Dischner[1] contends that the trial court erred in finding that UBA complied with the notice and commercially reasonable sale requirements of Uniform Commercial Code section 9–504(3) (AS 45.09.504(c)) governing the disposition of repossessed collateral. In addition, Dischner asserts that the underlying secured transaction was an unenforceable contract because it violated a section of the Alaska Banking Code requiring a lease by a bank to be "executed in writing" before the property is leased. We hold that while the contract is enforceable, UBA did fail to comply with the notice requirements of the U.C.C., and therefore we reverse and remand for the superior court to determine the actual value of the collateral and then accordingly to recompute the deficiency judgment due UBA.

In September 1976, Dischner and Rolle leased[2] a fleet of thirty-four new vehicles from UBA for "Rent-a-Car, Inc.," the name under which Rolle and Dischner conducted a car rental business. Subsequently, Rent-A-Car failed to make the lease payments, and in February 1977, UBA sent notices of default to Dischner and Rolle. When the default was not cured, UBA terminated the lease in April and immediately repossessed two of the cars.

During the rest of April and into May, UBA had several discussions with Rolle in an effort to remedy the default and reinstate the lease. These negotiations were unsuccessful, and since the arrearages remained uncured, UBA commenced an action to repossess the rest of the fleet and to recover any deficiency from Dischner and Rolle.

In June, the trial court ordered Rolle to return the remaining vehicles to UBA. Most of the cars were returned to UBA by July 1.

After the repossession of the vehicles, and without notice to Rolle or Dischner, UBA immediately leased the cars to Payless Rent-A-Car.

In late July, Dischner purchased from UBA one of the cars that had been in his personal possession throughout the lease and had not yet been repossessed by UBA.

In attempting to sell the vehicles during the months following the repossession, UBA contacted one car rental company and the car dealer who had originally sold the cars to UBA to determine whether they would be interested in buying the cars. Both declined to purchase any of the cars. In addition, UBA distributed the list of available cars among its customers and a few other individuals in the Anchorage area.

While the car dealer who had originally sold the cars to UBA declined to buy any of them back, he told UBA that he would consider $50,000 as a good offer for the fleet, if sold intact. Also, he told UBA that the cars could be sold individually on a consignment basis only a few at a time over an extended period.

Finally, in September, Payless bid $40,000 for the thirty cars it was then leasing.

---

* Hodges, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Dischner's co-defendant, Jim Rolle, has not joined in this appeal.

2. The "lease" of the fleet of cars from UBA to Dischner was not a true lease. The transaction included an option to buy which could be exercised by the lessee for a nominal sum at the end of the lease. Such a "bailment lease" is clearly a secured transaction which must meet the requirements of article 9 of the Uniform Commercial Code. AS 45.01.201(37)(B); *Stanley v. Fabricators, Inc.*, 459 P.2d 467, 469–70 (Alaska 1969). At trial, UBA stipulated to the applicability of article 9 to the instant transaction.

Without notice to Rolle or Dischner, UBA accepted the offer. After subtracting the insurance proceeds for one car which had been totally destroyed, Payless paid $37,-498.22 for the twenty-nine remaining cars.

Aggregating UBA's income from the lease, several private sales of individual cars, an insurance payment on one, and the fleet sale to Payless, UBA received a total of $67,648.22 for the collateral. After subtracting the net proceeds received from the disposition of the collateral from the outstanding balance due on the lease, the trial court awarded UBA a judgment of $79,-301.05, after holding that UBA had complied with the collateral disposition requirements of the U.C.C.

I

The first question we address is whether Dischner received adequate notice as required by AS 45.09.504(c). The relevant portion of the section provides: "reasonable notification of the time after which a private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . ."

Regarding this requirement of the U.C.C., the trial court stated in its findings of fact, "Lewis M. Dischner, James Rolle and Rent-A-Car, Inc. had actual notice of the time after which a private sale was to be made prior to any of the sales of vehicles of the leased equipment being made." In its conclusions of law the trial court held, "After repossession Lewis M. Dischner, James Rolle and Rent-A-Car, Inc. had actual notice or constructive notice of the date after which the collateral would be available for private sale." Dischner attacks the trial court's finding of actual notice as being clearly erroneous.

Appellate review of a trial judge's findings of fact are governed by Alaska Rule of Civil Procedure 52(a), which provides:

In all actions tried upon the facts without a jury . . . the court shall find the facts specially . . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

In *Alaska Foods, Inc. v. American Manufacturers Mutual Insurance Company*, 482 P.2d 842 (Alaska 1971), we more fully set out the requirements of the "clearly erroneous" test used for reviewing a judge's findings of fact, "A finding is clearly erroneous when, although there may be evidence to support it, we are left with the definite and firm conviction on the entire record that a mistake has been committed." *Id.* at 848 (footnote omitted).

The clearly erroneous test as articulated in *Alaska Foods* applies not only to the trial court's findings as to disputed factual issues where there is conflicting evidence, but it also applies to situations where reasonable minds might draw several different inferences from undisputed facts. *Id.* at 846.

In the present case, the trial court made a finding of fact that Dischner had actual notice of the time after which the collateral would be sold. The only evidence in the record upon which this finding could be based is as an inference from the undisputed fact that UBA sold Dischner one of the cars on or about July 29, 1977. Since most of the cars had been repossessed by July 1, and the bulk of the collateral was later sold near the end of September, UBA maintains that the intervening sale of the one vehicle to Dischner "put him on notice that the balance of the collateral was subject to sale."

We conclude that the inference of actual notice drawn by the court from the sale of the one vehicle to Dischner was clearly erroneous.[3] This is particularly true because

---

**3.** Because of our decision that the trial court was clearly erroneous in finding actual notice, it is unnecessary for us to determine whether such actual notice or knowledge, rather than oral or written notice would have satisfied the requirement of section 504(c). *See e. g., Crest Inv. Trust, Inc. v. Alatzas*, 264 Md. 571, 287

A.2d 261, 263–65 (1972) (actual notice or knowledge sufficient); *Hall v. Owen County State Bank*, 370 N.E.2d 918, 925 (Ind.App.1977) (oral notice sufficient); *DeLay First Nat'l Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745, 749 (1976) (only formal written notice sufficient). *See also* R.

the vehicle had been in Dischner's personal possession throughout the lease and had not yet been repossessed, and therefore would not have given Dischner notice of the pending disposition of the repossessed fleet.

## II

Since UBA failed to meet the notice requirements of section 504(c), a rebuttable presumption arises that the actual value of the collateral is equal to the amount of the outstanding debt. *Hoch v. Ellis*, 627 P.2d 1060, 1063 (Alaska 1981). This presumption may be rebutted only by a showing, by clear and convincing evidence, of the fair and reasonable value of the collateral. *Id.* at 1063; *Kobuk Eng'r & Contracting Serv. v. Superior Tank & Constr. Co.-Alaska*, 568 P.2d 1007, 1013–14 (Alaska 1977).

■ In the present case, the trial court made no finding expressly addressed to the issue of the actual value of the collateral. Therefore it is necessary to remand the case for a determination of this matter by the trial court based upon the record. If the trial court is able to find, by clear and convincing evidence, the fair and reasonable value of the collateral, UBA may be awarded a deficiency judgment based on the difference between the value of the collateral as found by the court and the outstanding debt.

## III

Dischner also claims that the lease was illegal and unenforceable because the written document memorializing the lease was not fully executed until after the cars had been delivered. Dischner maintains that this violated AS 06.05.232(a)(1) of the Alaska Banking Code. This section provides in

relevant part: "The department may authorize a bank to become the owner and lessor of real or personal property acquired upon the specific request of and for the use of a customer, if ... the original lease is executed in writing before acquisition of the property to be leased ...."

With respect to this issue the trial court held as a conclusion of law that:

> James Rolle and Lewis M. Dischner d/b/a "Rent-A-Car, Inc." entered into a Lease Agreement with United Bank Alaska on September 17, 1976, which at all relevant times was fully executed and in the files of United Bank Alaska. This lease Agreement is in evidence as ... a replacement document, and is a valid, enforcable; [sic] integrated contract, and any liability on the contract is as to Rolle and Dischner personally.

This holding was supported by the trial court's finding of fact that "Lewis M. Dischner executed the Lease Agreement which is [in evidence], such being a replacement document for a. similar one signed by him on September 17, 1976."

Dischner first attacks the trial court's finding of fact that Dischner signed the original lease document on September 17, 1976, as being clearly erroneous. We disagree and hold that there is sufficient evidence to support the court's finding that Dischner signed a written lease document before the cars were delivered.

There was testimony and evidence at trial to support the following: Dischner signed a lease document on September 17, 1976, and the vehicles were not delivered until on or shortly before October 4, 1976. After the cars had been delivered, UBA discovered an error in the computation of the costs under

Henson, Secured Transactions § 10–11, at 370 (2d ed. 1979); J. White & R. Summers, The Law Under the Uniform Commercial Code § 26–10, at 1112–13 (2d ed. 1980).

Also, it is unnecessary for us to address Dischner's claim that UBA disposed of the collateral in a commercially unreasonable manner. When a secured party, in disposing of collateral, fails either to give adequate notice or to proceed in a commercially reasonable manner, a rebuttable presumption arises that the value

of the collateral equals the amount of the outstanding debt. This rebuttable presumption is the same whether the creditor has failed to comply with the notice or commercially reasonable disposition requirements. *Hoch v. Ellis*, 627 P.2d 1060, 1063 (Alaska 1981). Therefore, the ramifications of UBA's failure to provide notice that are discussed below would be the same if it had failed to proceed with the disposition in a commercially reasonable manner.

the lease. Then on October 8, 1976, UBA sent a redrafted lease to Dischner with the correct costs. Dischner signed the corrected lease and returned it to UBA, at which time the original lease was removed from the bank's files and destroyed, and the new lease was substituted for the original one in the files.

From the above testimony and evidence, we cannot say, with a definite and firm conviction, that the trial court was clearly mistaken in finding that Dischner had signed a written copy of the lease prior to the delivery of the cars.

Next, Dischner contends that "executed in writing" in AS 06.05.232(a)(1) requires that a bank lease be signed *both* by the bank and the lessee before the leased property is delivered. We disagree.

Looking first on the face of the statute, in terms of normal English usage, the phrase "executed in writing" may readily be interpreted to require the signing of the document either by one or by both parties. The Alaska Banking Code contains no definition of these terms. Therefore, it is necessary to examine the legislative purposes behind the enactment of section 232's limits on the leasing activities of banks.

The legislative history reveals that the limitations contained in section 232 were enacted to serve two purposes relevant to the issue of interpretation before us: (1) to protect the quality of the assets of the bank, and (2) to safeguard the interests of the depositors. 1970 Alaska House Journal 1086.

An analysis of these legislative purposes behind the limitations on the leasing activities of banks leads to the conclusion that an interpretation of "executed" as meaning that both the lessee and the bank must sign is not necessary to further either of these purposes. An interpretation of "executed" as meaning only that the lessee must sign before delivery serves both legislative purposes by making sure that the bank has a written contract enforceable against the lessee before the bank commits its assets to a purchase. Therefore, we conclude that in light of the clearly expressed legislative purposes behind the writing requirement of section 232(a)(1), the only viable interpretation is that a writing is "executed," for the purposes of the statute when it has been signed by only the lessee. Therefore, since we have upheld the trial court's finding that Dischner signed the lease before the delivery of the cars, there was no violation of section 232(a)(1).[4]

IV

The last contention of Dischner's we address is that UBA acted in bad faith when it sold one of the jeeps held as collateral to itself.

Dischner's claim of bad faith is without merit. UBA sold the jeep to itself at "Blue Book" price. There is no showing anywhere in the record of the subjective and conscious dishonesty necessary to breach the U.C.C.'s requirement of good faith in commercial transactions. AS 45.01.-201(19), .203.

Accordingly, the judgment of the trial court is REVERSED and the case REMANDED to the superior court for additional findings on the actual value of the collateral and entry of a new judgment in accordance with such findings.

---

4. Since we have held that UBA did not violate section 232(a)(1), it is unnecessary to determine Dischner's claim that if the section had been violated, the contract would be unenforceable on grounds of public policy.