**NORTHERN COMMERCIAL COMPANY, d/b/a N.C. Machinery, Appellant,**

v.

**Les COBB d/b/a Cobb Enterprises, Bill Beaman d/b/a Mallard Leasing, David Dahl d/b/a Dahl & Company, and Steve Sneed d/b/a Eclipse Mining, Appellees.**

No. S–2351.

Supreme Court of Alaska.

July 28, 1989.

Susan E. Reeves, Guess & Rudd, Anchorage, for appellant.

Gail M. Ballou, Fairbanks, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

Appellant Northern Commercial Company d/b/a N.C. Machinery Company ("NC") seeks possession of an item of collateral which its debtor sold to appellee Mallard Leasing Company ("Mallard"). The trial court granted summary judgment to Mallard on the theory that NC had impliedly authorized the sale to Mallard, thus destroying NC's security interest in the collateral. On appeal, Mallard asserts that it is also protected as a buyer in due course, and that NC's private sale of other collateral satisfied the underlying debt at issue.

### II. FACTS AND PROCEEDINGS

In September of 1983, NC sold to Les Cobb d/b/a Cobb Enterprises ("Cobb") a used Caterpillar D8K Tractor. NC loaned a portion of the purchase price to Cobb, and took a security interest in the tractor and in a Caterpillar 966C Wheel Loader, which NC had previously sold to Cobb. NC duly perfected its interest in these items by filing a financing statement in the public records.

Cobb apparently sold the loader to Mallard in early 1986. Cobb thereafter defaulted on the terms of the security agreement by failing to make installment payments due for July, August, and September, 1986. NC then sought to accelerate the note and demanded possession of the loader.[1] NC then filed suit and a motion for prejudgment attachment. All parties agreed to treat the motion as one for summary judgment.

The trial court considered essentially three theories. First, whether NC had consented to the sale of the loader to Mallard, destroying its security interest in the loader. Second, whether Mallard is protected as a purchaser in due course from Cobb. Third, whether the lien had been discharged by satisfaction of the underlying

---

1. NC named in its suit Cobb, Mallard, David Dahl d/b/a Dahl & Company (lessee or potential lessee of the loader from Mallard), and Steve Sneed d/b/a Eclipse Mining (lessee or potential lessee of the loader from Cobb). This appeal turns, however, on whether the security interest continued in the loader after Mallard purchased it from Cobb.

debt. That is, whether the debt was discharged by NC's sale of a separate piece of collateral, the tractor. However, the court only ruled on the first theory, reasoning that its disposition of the case on this theory rendered the other theories irrelevant.

The trial court noted that the security agreement covering the loader does not restrict disposition of the collateral and that the U.C.C. financing statement retains a security interest in proceeds of any sale of the loader, and concluded that NC had "authorized" the sale. The court held that the security interest in the loader therefore did not survive the sale from Cobb to Mallard because the sale was authorized according to the terms of AS 45.09.306(b).

## III. DISCUSSION

### A. VALIDITY OF SUMMARY JUDGMENT BASED ON AUTHORIZED SALE

#### 1. *Based on Security Agreement and Financing Statement*

■ As a general rule, a valid security interest follows the collateral into the hands of the purchaser. Alaska Statute 45.09.201 provides:

> Except as otherwise provided by this chapter, a security agreement is effective according to its terms ... against purchasers of the collateral....

The trial court, however, held that as a matter of law NC had authorized the sale from Cobb to Mallard, thus excepting Mallard from this general rule. Alaska Statute 45.09.306(b) states that if the sale was authorized by the secured party the security interest does not continue in the collateral:

> (b) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition of it *unless the disposition was authorized by the secured party in the security agreement or otherwise....* (Emphasis added)

The trial court found that NC had impliedly authorized the sale of the loader by omitting from the security agreement any language which would have prohibited resale without NC's permission and by retaining an interest in proceeds. The court stated:

> The parties' respective arguments on the issue of authorization by consent are irrelevant where the security agreement on the loader does not restrict disposition. Also, the U.C.C. financing statements for both pieces of equipment expressly provide that N.C. retains a security interest in the proceeds of sale in the event that Cobb resells the equipment.

The question presented is therefore whether the court properly concluded on the basis of this evidence that NC impliedly authorized the sale of the loader.

■ The trial court erred in basing its decision on the above facts. Alaska Statute 45.09.306 is an adaptation of the Uniform Commercial Code, section 9–306. The Official Code Comment[2] to that section expressly distinguishes between a retained right to proceeds and an authorization to sell the collateral. "The right to proceeds ... under specific mention thereof in a security agreement or financing statement does not in itself constitute an authorization of sale." Official Code Comment, *reprinted in* 9 R. Anderson, *Anderson on the Uniform Commercial Code* § 9–306:1, at 132 (3d ed.1985) (hereinafter "Anderson"). Such a provision exists merely as a precautionary measure so that should a sale occur, the creditor is expressly protected by the terms of the agreement.[3] *See Vermilion County Prod. Credit Ass'n v. Izzard,* 111 Ill.App.2d 190, 249 N.E.2d 352, 354 (1969) ("It is a clause inserted to protect the security holder as to third parties—not one of permission or consent to the borrower."). The court's deci-

---

**2.** This court has found the Official Code Comments persuasive in the past. *See, e.g., Morrow v. New Moon Homes, Inc.,* 548 P.2d 279, 287 n. 24 (Alaska 1976).

**3.** Indeed, until the U.C.C. was amended in 1972 a creditor had no statutory right to proceeds unless such an interest was expressly retained. Anderson, § 9–306:2, at 134. Thus, a provision such as the one at issue may be nothing more than a hold-over on an old form.

sion was thus improper insofar as it concluded that a retained right to proceeds indicates an implied authorization to sell the loader.

■ Similarly, the mere absence of a restriction on sale in the security agreement does not constitute implied authorization to sell. Alaska law places no burden on a secured party to restrict resale in the security agreement. The question of implied authorization is more properly viewed as a question of fact, with absence of a restriction considered only a factor in that determination. *See, e.g., Platte Valley Bank of Brighton v. B & J Constr., Inc.,* 44 Colo. App. 21, 606 P.2d 455, 457 (1980) (Implied authorization to be determined by circumstances of parties, nature of collateral, course of dealing, and usage of trade); *Poteau State Bank v. Denwalt,* 597 P.2d 756, 760 (Okla.1979).

■ Consent to sale must consist of more than mere absence of restrictions. Implied agreement to sale "should be found with extreme hesitancy and should generally be limited to the situation of a prior course of dealing with the debtor permitting disposition." Anderson, § 9–306:44, at 169. Moreover, a transferee of collateral should bear the burden of showing that the sale was authorized. *Id.,* § 9–306:9, at 141.

In short, the trial court could not properly have reached its decision based only on the absence of affirmative restrictions on sale and on NC's reservation of a security interest in proceeds. The question remains, however, whether other facts exist which render the trial court's decision proper.[4]

### 2. *Based on Other Evidence in the Record*

Mallard maintains that NC's credit manager, Tom Kleinschmidt, both knew of and consented to the sale, and introduces Kleinschmidt's deposition testimony as evidence:

Q: How do you know that [Cobb] was attempting to sell things from his construction and mining business?

A: Because he told me he was.

. . . .

A: [T]he main thing he discussed was that he wanted to sell either construction or mining equipment to reduce his debt level.

Q: When you say construction or mining equipment, does that include the D8K and the 966 [loader]?

A: Yes.

. . . .

Q: And did NC expect that if he sold the 966 or the D8 that he would take that money and pay NC?

A: I specifically said that to him and he agreed that is what he would do.

Q: This was in December of '85 or January of '86?

A: Yes.

Q: Did he put anything in writing about agreeing to pay NC the proceeds of the sale?

A: No, he didn't put anything in writing, no.

Q: Did you put anything in writing about requiring him to give NC the proceeds of the sale?

A: No, I didn't put anything in writing but he verbally agreed that he would do that.

Q: And of course NC had no objection to the sale as long as he paid the money to NC; is that right?

A: Yes, that is right.

Q: Did you tell Cobb that?

A: Yes, I did.

This testimony shows that NC knew of Cobb's plan to sell the loader and authorized him to do so. This authorization, however, was conditional. NC in effect authorized the sale, as long as Cobb agreed to pay the proceeds to NC.

Under these circumstances we conclude that NC did not "authorize" the sale within the meaning of AS 45.09.306(b). No autho-

---

**4.** This court may affirm a trial court's grant of summary judgment if alternative grounds exist for upholding the judgment. *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.,* 584 P.2d 15, 25 (Alaska 1978); *Moore v. State,* 553 P.2d 8, 21 (Alaska 1976).

rization exists where the debtor fails to satisfy the conditions of the creditor's conditional consent. *North Cent. Kansas Prod. Credit Ass'n v. Washington Sales Co., Inc.*, 223 Kan. 689, 577 P.2d 35, 39 (1978). We see no reason to depart from this general rule where the condition was that the debtor remit the proceeds of sale to the creditor.[5] As the Oregon Supreme Court has noted, in this situation the purchaser can easily protect itself by checking the records for any security interests in the item, requiring proof of consent, and making payment directly to the creditor. *Baker Prod. Credit Ass'n v. Long Creek Meat Co., Inc.*, 266 Or. 643, 513 P.2d 1129, 1134 (1973). *See also Southwest Washington Prod. Credit Ass'n v. Seattle–First Nat'l Bank*, 92 Wash.2d 30, 593 P.2d 167, 169 (1979). NC's security interest in the loader therefore was not extinguished by AS 45.-09.306(b).

### B. WHETHER MALLARD WAS PROTECTED AS A BUYER IN ORDINARY COURSE OF BUSINESS

Alaska Statute 45.09.307(a) provides that a buyer in the ordinary course of business takes his or her purchase free of a security interest created by the seller:

> A buyer in ordinary course of business (AS 45.01.201(9)) ... takes free of a security interest created by the seller even though the security interest is perfected and even though the buyer knows of its existence.

A "buyer in the ordinary course of business" is defined by AS 45.01.201(9) as:

> A person who, in good faith and without knowledge that the sale to that person is in violation of the ownership rights or security interest of a third party in the

goods, buys in ordinary course from a person in the business of selling goods of that kind.

■ Mallard contends that it is a buyer in the ordinary course, and that AS 45.09.-307(a) protects it from NC's security interest. In order to establish that this section applies, Mallard, as the buyer claiming to be protected, bears the burden of proving the necessary elements of that section of the statute. *Matter of Gary Aircraft Corp.*, 681 F.2d 365, 373 (5th Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366 (1983). It must prove essentially two elements. First, that Cobb was in the business of selling goods of that kind.[6] Second, that it acted in good faith, with no knowledge that the sale violated the security agreement.

■ In order to claim the protection of AS 45.09.307(a) Mallard must show that Cobb was a dealer in heavy equipment. Mallard introduced as evidence an affidavit signed by Les Cobb. In the affidavit, Cobb stated that he had been a dealer in vehicles and equipment since approximately May, 1985. He further stated that during that time he had continuously displayed a large sign which reads "Cobb Truck and Equipment Sales—Rental—Lease" in a prominent location on his display lot; that he had periodically advertised in the classified advertisements section of the Fairbanks Daily News–Miner; and that he had obtained an Alaska Motor Vehicle Dealer Registration Certificate.[7] Finally, he stated that he had sold fifteen to twenty other items before he sold the loader to Mallard, and continued to sell vehicles and equipment after the sale.

---

**5.** We reject the approach adopted by some courts that a consent of this type is not a "true conditional consent." *See, e.g., First Nat'l Bank and Trust Co. of Oklahoma City v. Iowa Beef Processors*, 626 F.2d 764, 768 (10th Cir.1980); *North Cent. Kansas Prod. Credit Ass'n v. Washington Sales Co., Inc.*, 223 Kan. 689, 577 P.2d 35, 41 (1978).

**6.** NC argues that Mallard must also prove that the loader was "inventory" in Cobb's hands. NC, however, misses the circular nature of this analysis. Although it is true that AS 45.09.-

307(a) applies primarily to inventory, the question of whether the loader was inventory in Cobb's hands depends on whether Cobb was in the business of selling goods of that kind. *United States v. Handy And Harman*, 750 F.2d 777, 782 n. 4 (9th Cir.1984); *John Deere Co. v. Jeff DeWitt Auction Co., Inc.*, 690 S.W.2d 511, 516 (Mo.App.1985); *First Dallas County Bank v. General Motors Acceptance Corp.*, 425 So.2d 460 (Ala.Civ.App.1982).

**7.** Cobb's license was eventually cancelled.

Mallard also submitted the affidavit of William J. Beaman, president of Mallard Leasing Company. Beaman stated that before he purchased the loader he personally visited Cobb's business to ascertain whether Cobb was a dealer. Beaman stated that he relied on the aforementioned large sign, and the fact that Cobb had many pieces of equipment in inventory. In fact, Beaman stated that "[t]he inventory was larger than that of some other dealers with whom I have done business over the years."

These affidavits do not resolve the issue of whether Cobb was a dealer in heavy equipment. The fact that Cobb was licensed as a motor vehicle dealer is not conclusive as to his dealership status. *Kaw Valley State Bank v. Stanley,* 514 S.W.2d 42, 45 (Mo.App.1974). This is particularly so where the question is not whether Cobb was a dealer of motor vehicles, but whether he was a dealer in heavy equipment. The affidavits contain no specific facts which would prove or disprove that Cobb was a dealer. The statement that Cobb had sold fifteen to twenty "other items" does not necessarily lead to the conclusion that these items were similar to the loader, or that Cobb was a dealer in heavy equipment. Further, Beaman's affidavit is undermined by his own admissions in other contexts. In a deposition he admitted that he had conducted business in Fairbanks since 1973, but had never heard of Cobb's company. He also admitted to Tom Kleinschmidt that he had originally been leery about Cobb's status but that Cobb had produced a "piece of paper" as proof that he was a dealer.

For these reasons, we find that a material question of fact exists as to whether Cobb was in fact a dealer in heavy equipment. Summary judgment therefore would be inappropriate on this issue.

## C. WHETHER NC'S LIEN WAS DISCHARGED BY SALE OF THE TRACTOR

At some point NC evidently repossessed the tractor which, along with the loader, secured the debt in the instant case. NC notified Cobb of its intent to sell the tractor at a private sale. NC did not notify anyone else of the intended sale. It then bought the tractor itself, for $110,000, roughly one-half the price for which NC had sold the tractor, used, to Cobb two years earlier. Mallard argues that this sale was commercially unreasonable and therefore that the value of the tractor presumptively equals the entire amount due on the debt.

Alaska Statute 45.09.504(c) authorizes a secured party to dispose of repossessed collateral by public or private sale, so long as the disposition is accomplished in a commercially reasonable manner. The creditor bears the burden of proving that every aspect of the sale was commercially reasonable, especially where, as here, the creditor purchased the property itself in a non-competitive atmosphere. *Kobuk Eng'g and Contracting Serv., Inc. v. Superior Tank & Constr. Co–Alaska, Inc.,* 568 P.2d 1007, 1012 (Alaska 1977). Courts will closely scrutinize a case where the opportunity for self-dealing is present. *Id.* at 1011. If the sale does not comply with the applicable rules, there arises a rebuttable presumption that the fair and reasonable value of the collateral is at least equal to the amount of the outstanding debt. *Id.* at 1013.

In the instant case NC argues that the sale was authorized by AS 45.09.504(c). That statute expressly allows a secured party to purchase the collateral at a private sale, if the collateral is "of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations." NC argues that the loader falls within the latter part of this provision.

NC argues that the loader is an item which is the subject of widely distributed standard price quotations, and that its purchase was therefore justified. NC based its purchase price on references in a market publication which lists wholesale prices and on another which lists retail prices nationwide. Based on analysis of these publications, NC arrived at a "fair market price" of $110,000 for the tractor. NC argues that the publications that it relied

on constitute indicia of nationwide standard price quotations, and that the purchase of the tractor thus falls within the commercially reasonable conduct permitted by the statute.

We have held that the purchase of an automobile under circumstances similar to these was commercially reasonable where the sale was at "Blue Book" price. *Dischner v. United Bank Alaska*, 631 P.2d 107, 111 (Alaska 1981). *See also Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank*, 18 Wash.App. 569, 570 P.2d 702, 712 (1977). Our holding in *Dischner* was based on the fact that the Blue Book represents an industry standard for used car prices. We have never addressed this issue as applied to tractors.

In *Hayes v. Ring Power Corp.*, 431 So.2d 226 (Fla.App.1983), one court held that tractors cannot fit within the statute's terms. The court noted that there is no standard price set for used tractors, and that prices fluctuate depending on market conditions and the condition of the equipment. *Id.* at 228. The court further noted that the various auction value publications available merely record bids on tractors at public auctions. *Id.* We find this to be true in the instant case. NC's appraiser, Robert Roskelly, used an auction guide to determine the tractor's price. By his own admission, that guide presented a range in price of $36,000 for the tractor at issue. His final appraisal rests on a complex analysis of national retail and wholesale prices, and on local market conditions.

In short, NC was unable to simply consult an industry standard guide to determine the tractor's value. We hold that a tractor is not customarily sold in a recognized market and is not the subject of widely distributed standard price quotations. As a matter of law, then, NC's private sale of the tractor was prohibited by AS 45.09.504(c) and thus was commercially unreasonable. Therefore, a rebuttable presumption arises that the true value of the tractor equals the amount of the outstanding debt. *Kobuk,* 568 P.2d at 1013. We remand this issue so that the trial court may determine whether NC's appraisal of the tractor is reasonable.

## IV.  CONCLUSION

The trial court erred in holding that NC authorized the sale of the loader. NC neither expressly nor implicitly authorized the sale.

As to Mallard's contention that it is protected as a buyer in due course, summary judgment is inappropriate. A material question of fact exists as to whether Cobb was a dealer in heavy equipment.

Finally, we find as a matter of law that NC's sale of the tractor was commercially unreasonable. On remand NC may rebut the presumption that the true value of the tractor equals the amount of the outstanding debt.

This case is REMANDED for proceedings consistent with this opinion.